**STATE ex HARBAGE v FERGUSON et**

Ohio Appeals, 2nd Dist, Franklin Co

No 3384. Decided July 11, 1941

B. F. Levinson, Columbus, for plaintiff-appellant.

Thomas J. Herbert, Attorney General, Columubs, E. G. Schuessler, Chief Counsel, Columbus, and Howard Bernstein, Asst. Atty. General, Columbus, for defendants-appellees.

EDITOR'S NOTE:—This case is pending in the Ohio Supreme Court, being case No. 28762. This opinion is published at this time because of the wide spread ·interest in this litigation.

## 130

**OPINION**

By GEIGER, PJ.

This action was begun in the Court of Common Pleas with the filing by the plaintiff-appellant, a taxpayer, of a petition wherein he seeks to enjoin the treasurer and the auditor of state from paying out any money for expenses to members of the 94th General Assembly other than their annual salaries of $2000.00 each.

Answers in the nature of general denials were filed on behalf of each of the defendants, and when the cause came on for hearing on the merits in the court below, the court found for the defendants and ordered that the petition of plaintiff be dismissed.

Notice of appeal to this court was given on questions of law and fact. With leave of this court plaintiff-appellant filed an amended petition in which it is alleged that pursuant to the provisions of **Article II, §31 of the Constitution** the Assembly has provided that the members thereof shall receive as compensation a salary in the sum of $2000.00 per annum; that the members, in violation of said Article, have provided by statute a travel allowance of five cents per mile each way each week to and from their homes, to be paid the member during the session of the body, and have appropriated money for the payment of such traveling expenses. The amended petition further alleges that unless enjoined the defendant auditor and treasurer will issue voucher and make payments for such travel allowance.

It is then alleged that the payment of any money for traveling expenses to any member of the Assembly in ex-cess of $2000.00 is illegal and in violation of the Constitution, and the un-lawful withdrawal of funds, and an injunction is asked.

To this amended petition the defendants-appellees have filed a demurrer on the ground that said amended petition does not state facts sufficient to constitute a cause of action.

### QUESTION INVOLVED.

The only question raised by the demurrer and to be determined by this court is, do provisions of §50 GC, contravene the provisions of **Article II, §31 of the State Constitution. Article II, §31**, provides as follows: (Emphasis ours).

"The members and officers of the General Assembly shall receive a fixed compensation, to be prescribed by law, and no other **allowance** or perquisites, either in the payment of postage or **otherwise**; and no change in their compensation shall take effect during their term of office."

**Sec. 50 GC**, where pertinent, is as follows: (Any emphasis is by the Court).

"Every member of the General Assembly shall receive as **compensation a salary** of $2000.00 a year during his term of office. Such salary for such term shall be paid in the following manner * * *.

"Each member shall receive a **travel allowance** of five cents a miles each way for mileage once a week during the session from and to his place of residence * * * to be paid at the end; of each regular or special session. * * *"

The section in addition to the compensation of $2000.00 a year fixes a travel **allowance,** and it is claimed by the plaintiff-appellant that such allowance is in violation of the constitutional provision.

The Attorney General files a comprehensive brief arriving at the conclusion that that part of §50 which pro-

vides that each member of the Assembly shall receive a travel allowance at a fixed rate as part of his compensation. is not in conflict with **Article II, §31**, or any provision of the Constitution, and that therefore the demurrer of the defendant should be sustained.

Counsel for plaintiff-appellant in his brief contra demurrer, recites interesting history of the legislative action leading first to the adoption of **Article I, §19 of the Constitution of 1802**, the provision of which Constitution was,

"* * * No member of the legislature shall receive more than two dollars per day, during his attendance on the legislature, nor more for every twenty-five miles he shall travel in going to and returning from the General Assembly."

This provision as to mileage is not as clear as it might be, but as we interpret it, it is to the effect that the member shall not receive as mileage more than two dollars for every twenty-five miles he shall travel in going to and returning from the General Assembly.

Counsel then furnishes us with a discussion in the Constitutional Convention of 1850, wherein the various resolutions were offered in reference to compensation of members and the mileage to be paid. The compensation suggested in these resolutions was very modest. These discussions show that at that time there was considerable criticism of the amounts which the members returned for postage and stationery, which might account for special mention of this item. After much discussion §31 was adopted in the form as set up above and is now in effect. Counsel for the appellant takes the position that the debates of the convention show that many abuses had grown up in fifty years between the Constitution of 1802 and that of 1851, and that it was the desire of the constitutional convention to eliminate certain conduct of the members of the Assembly in spending sums for personal use and charging the same to the State as postage, and that it was the desire of the framers of the amendment to prohibit

this questionable practice. He points out the fact that while there was a provision in the Constitution of 1802 of $2.00 for each twenty-five miles, that the provision for mileage was eliminated from the Constitution of 1851.

It is quite proper to consider the debates of the members of the constitutional convention where they will throw light upon the proper interpretation of any provision of the Constitution, but these debates are only useful for the purpose of shedding such light as they may upon the words that finally appear in the constitutional provision. If these are clear and may be read without interpretation, the discussion that finally led to their adoption is of no value, nor can we consider the various statements by the members and resolutions offered during the convention as determinative of the meaning of the amendment. The final result is the adoption by a majority of the convention of the provision incorporated into the Constitution.

Counsel for appellee in their reply brief put a different construction upon the reported debates quoted by the plaintiff-appellant, and asserts that an examination of the portion of the debates quoted readily reveals that the members of that constitutional convention endeavored at all times to draft an amendment that would permit the payment of mileage, and it is asserted that the discussion will disclose that the members of the convention in construing an amendment were concerned only with the abuses which had arisen in connection with allowance for postage and stationery, and that the question now before us was not one then giving the members any concern. But all that was ninety years ago. The Constitutional Convention of 1912 made no change in the provision.

The only way we can safely consider the question as to whether the statute violates the Constitution is to examine both in the light of such decisions as have been rendered interpreting either. The article provides that the members

and **officers** of the Assembly shall receive a **fixed compensation** to be prescribed by law and no other **allowance** or **perquisite** in payment of postage or **otherwise**. The purpose of the constitutional provision is to provide a compensation which is fixed and may not be changed during the term of office, and that the members shall receive no other allowance or perquisite. This prohibition against an allowance or perquisite is to prevent the members of the Legislature availing themselves of any opportunity to increase the fixed compensation, which is to remain fixed during their term. They may not receive any perquisite, which is something **gained** from a place of employment **over and above the ordinary salary** or fixed wages for services rendered; especially a fee allowed by law to an officer for a specific service. All the definitions contemplate a **profit** to be secured by the officer out of the office he occupies in addition to his fixed compensation. We can very clearly determine that the reimbursement of a member of the Legislature for his actual expenses does not fall within the ordinary definition of the word "perquisite". But he is not permitted to have an **allowance**, and this presents a somewhat different question not so easy of solution. The dictionary gives the definition of allowance as "A sum granted as a reimbursement, a bounty". If we can narrowly interpret the word "allowance" into a reimbursement or a provision to cover expenses, we meet with less difficulty. It frequently happens that one is engaged at a fixed salary or compensation, in addition to which he has an allowance for expenses. If such an allowance goes to increasing the fixed salary, then we would be required to say that it is forbidden, as, for instance, there could be no allowance made for hotel and living expenses, and such an item would seem to fall within the intention of the drafter

of the constitutional provision, when it was provided that there should be no other **allowance** in the payment of postage "or otherwise". It was the abuse that had grown up in the first fifty years of our constitutional life on account of which those thrifty members who sat in 1850 as members of the constitutional convention sought to protect the public treasury against what would now seem to be petty chiseling, by charging certain personal expenses to the treasury under the guise of postage or stationery. Those items are too small now to afford a refuge for those members of the Legislature who might seek an additional compensation, and it seems in recent years more popular to resort to the mileage as a source of additional compensation. That was evident in the case of **Harbage, appellee v Tracy, 64 Oh Ap 151**, wherein the Court was compelled to deal with a custom that had been long in use, of charging mileage to and from the residence of the members for forty or more sessions which never took place and on which there was never any attendance. After that decision the Legislature enacted the present §50. It is hard to conceive why the Legislature, with full power to fix their own compensation, should use the word **"allowance"** in providing that each member shall receive a travel **allowance**. An "allowance" is definitely banned by the Constitution itself. There were other ways in which the Legislature could secure an honest and fair substitute for the doubtful plan of charging for mileage to and from sessions that never existed. If the Legislature had frankly stated that having been denied the customary mileage it was but a just substitute for that reduction of their income, to increase their salary so that an undoubted constitutional income could be secured, no one could have justly complained, because every one must recognize that, in a city the size of Columbus expenses are so high that the members of the Legislature should be dealt with with some generosity. However, that is beside the point and we are dealing not with what the

Legislature might have done, but with what it did. The Constitution provides that the members shall receive a fixed compensation to be prescribed by law. That assumes some discretion upon their part to determine what would constitute a compensation. It will be observed that the Constitution does not use the word "salary", but the broader term "compensation". Sec. 50 provides that the member shall receive as **compensation** (the constitutional word) a salary of $2000.00 a year. This salary is to be paid in certain fixed amounts per month during the first session of a term and the balance in equal monthly installments during the remainder of the term. The act provides that in case of the death of any member these payments shall be paid to his dependents in the amounts that would have been paid to the member had he lived. That portion of the act to which we have alluded disposes, in legislative contemplation, of the **"fixed compensation"**. The act then proceeds to the effect that in addition thereto the member shall receive a "travel allowance" of five cents a mile once a week during the session. It is of course apparent that the payment of this amount once a week has no direct relation to the expenses that member may incur, as some infrequently return to their place of residence during the term, and some live so near by or even in the City of Columbus that the provision in their behalf is small, and if it is to be regarded as a salary or a portion of salary it may be claimed that it would be obnoxious to the constitutional provision that the members shall receive a fixed compensation. The legislative purpose was to reimburse a member for traveling expenditures at a fixed rate of five cents a mile. There was no attempt to make an exact reimbursement by requiring the members to report their actual expenses, but the Legislature assumed that the only safe way was to allow a fixed amount per mile and a definite number of trips per week, whether the same were taken or not. Much discussion has centered around the question as to whether there is a

difference between compensation and salary. We do not deem this of importance because the constitutional provision does not mention "salary". but confines itself to the word "compensation".

For those who wish to pursue this matter further we cite **Thompson v Phillips, 12 Oh St 617,** having to do with an attempt to increase an officeholder's compensation during his term of office, not by increase in salary definitely prohibited by **Art. II, §20,** which provides that the General Assembly shall fix the **compensation** of all officers, but no change shall affect the **salary** of any officer during his existing term. The Court states that it is manifest that the word "salary" used in the Constitution was not used in its general sense, embracing any compensation, but in the limited sense of an annual or periodical payment, dependent upon time, and it is held that where the compensation is to be ascertained by a percentage, it is not salary within the prohibition of the Constitution.

In the case of **State v Raine, 49 Oh St 580,** the matter is further discussed, and it is there held that the allowance of $1000.00 to each county commissioner for expenses, without the use of the word "salary", is, as a matter of fact, an increase of salary which could not be granted during the term of office.

**Gobrecht v Cincinnati, 51 Oh St 68,** holds that where the members of a board shall be entitled to receive $5.00 for attendance it is not salary and that the increase from $5 to $10 is not prohibited by the constitution. This case goes somewhat at length in giving the definition of "salary" and stating that it is compensation, but under the section of the Constitution compensation is not in every instance salary. The Court holds in that case that although there is a per diem compensation an increase in payment to a member of a board during his term is not prohibited by the Constitution.

We have referred to these cases not because they have any special bearing upon the case at bar, but from the fact that counsel have cited them and have

insisted that they are pertinent. It is difficult to reconcile them.

We also cite **State ex Metcalf v Donahey, 101 Oh St 490; State ex rel v Beaman, 106 Oh St 650.**

Counsel for appellant relies upon **State ex DeChant v Kelser, 133 Oh St 429,** to which we have given our attention, but do not now comment upon, except to say that it is controlled by §20, Art. II prohibiting an increase of compensation during the term of office of the incumbent. This is not the question involved in the present case, as all members have been reelected since the passage of §50 GC in 1937.

The case that has given us most difficulty is **State ex Boyd v Tracy, 128 Oh St 242,** in which it is held that §8 **of Art. III,** which relates to extra sessions of the Legislature, gives no constitutional authority for the enactment of a bill which made an appropriation for paying expenses of $4.00 per legislative day incurred by members in attending special sessions of the Legislature. It is held that such a bill is in violation of the provisions of §31, Art. II. The decision is written by Stephenson, J., and discusses at length the right of the Legislature to provide for expenses of the individual members by granting to each a compensation of $4.00 a day during special session. The Court holds that such a provision is violative of §31, Art. II. It is not at once clear whether the decision of the court was based upon the constitutional provision that there should be no increase in salary during the term or upon the provision of the Constitution that there should be no allowance in addition to the fixed compensation.

A close examination of the Tracy case leads us to the conclusion that the act was held to be in violation of that part of the provisions of §31, Art. II, which states: "and no change in their compensation shall take place during their term of office."

The court does not pass upon the questions as to whether the allowance of $4.00 per day for extra session is prohibited by the provisions of the section providing "and no other allowance or perquisites either in the payment of postage or otherwise."

The first syllabus is to the effect that §8 of Art. III, relating to a special session affords no constitutional authority for the enactment of the bill making the per diem allowance.

The second syllabus is that House Bill No. 4 is a violation of the provisions of §31, **Art. II of the Constitution of Ohio,** and is, therefore, invalid.

In the examination of this interesting decision, we find the expression by Stephenson, J., delivering the opinion of the Court, the substance of which we will refer to without citing the page where found.

The court states that it is claimed that the bill is unconstitutional for the reason in effect, it either increases the compensation of the members during the term of office or grants "an allowance for expenses in direct violation of the provisions of §31, Art. II * * *."

The entire decision subsequent to that statement seems to us to refer distinctly to the provisions of the Constitution providing no change in compensation shall take effect during the term of office. There is no direct reference to the provision of the Constitution that the members shall receive "no other allowance * * * either in the payment of postage or otherwise."

The Judge quotes R. C. L. to the effect that a constitutional provision forbidding the change of compensation of an official during his term of office is inexorable. It admits of no exceptions and it affords no opportunity for evasion by the Legislature or other body.

The Court states:

"In the face of §31 of Art. II of the **Constitution of Ohio,** House Bill No. 4 must get its constitutional virtue from the last clause of §8 of Art. III of that instrument, namely, 'but the general assembly may provide for the expenses of the session and other matters incidental thereto.'"

The Court further states:

"We just can not follow counsel to the extent of holding that the words 'expenses of the session' by necessary implication include 'expenses of the members of the general assembly.'"

We, therefore, arrive at the conclusion that the Tracy case is not based upon the denial of an allowance in addition to the fixed compensation and does not militate against the view that we have taken that the latter part of §50 provides for a **reimbursement** for travel expenses.

### ANOTHER VIEW.

However, if we are wrong in concluding that only the first part of §50 applies to compensation, and that the latter part provides for reimbursement, then we may examine §50, to ascertain whether the whole section does not relate to fixed compensation made up in part of the salary of $2000.00 plus the allowance for mileage.

The Constitution provides that the compensation shall be "prescribed by law", and therefore it is within the the power of the Legislature to fix that compensation in any way it may desire provided it does not violate the Constitution.

We return again to the Tracy case, and examine the decision to ascertain whether it throws any light upon this point. Quoting again from the opinion of the court, it is stated:

"We are aware that there is authority in Ohio to the effect that to invalidate a statute the repugnacy between the statute and the Constitution must be plain, clear, substantial, palpable, strong, manifest, obvious, necessary, free from doubt and incapable of a fair reconciliation."

Under this guidance we examine §50 in connection with the further rules laid down in the Tracy case.

The Court further states:

"The General Assembly has full power to fix compensation for its members, but it must be a fixed compensation, not an ephemeral one, but no change in their compensation shall take effect during their term of office."

The Court also states:

"Relator insists that compensation is one thing and expense is another. That is quite true, but they trot along hand in hand, and when used in connection with members of the General Assembly, or any other public officer for that matter, they bear a close relationship."

The Judge points out that the $4.00 provided by House Bill No. 4 "goes to replace the dollars he has taken out of his pocket. **It is compensation.**"

We are admonished that an act of the Legislature shall not be held unconstitutional unless the repugnancy of the statute to the Constitution is such as to render it incapable of a fair reconciliation with the Constitution. If there be such repugnancy the Court must declare the act unconstitutional; if the so-called repugnancy can be reconciled to the Constitution the Court must do so. The rule should be adhered to even as to this self-serving enactment.

As before pointed out, the first part of §50 provides that the members shall receive as compensation a **salary** payable as therein provided. The latter part provides that each member shall receive "travel allowance" of five cents a mile.

The Legislature seems to have been careless in the use of the word "allowance", which is definitely prohibited by the Constitution. However, we are of the opinion that in spite of the carelessness in the drafting of this act we may consider "travel allowance" as if it were a part of the members' compensation. In doing this the first difficulty we meet is that the Constitution provides that it must be fixed, and as Stephenson, J., says, "It must be a fixed compensation, not an ephemeral one."

Is compensation of $2000.00 plus mileage, which of necessity differs with

**136**

the distance that each member must travel "from and to his place of residence", a fixed compensation?

If this provision gives a different compensation to the different members of the Legislature, it may be difficult to say how it can be reconciled with constitutional provisions. However we are of the opinion that the provision is of uniform operation as it ██ applies uniformly to all members who are equidistant from Columbus. In view of the duty imposed upon us to sustain an act of the Legislature, where not hopelessly repugnant to the Constitutional provisions, we arrive at the conclusion that if we were wrong in our former statement that the mileage is but a reimbursement, we may still preserve the constitutionality of the act by holding that the provision as to the mileage is in fact a part of the compensation, and the fact that the final payment to a member of the Legislature shall depend upon the distance he may live from the seat of government, does not render the act unconstitutional.

Demurrer sustained. Judgment accordingly.

HORNBECK and BARNES, JJ., concur.