CITY OF KETTERING, APPELLEE, *v.* BERGER, APPELLANT.

(No. 7289 — Decided January 8, 1982.)

Mr. F. J. Newberry, for appellee.
Mr. Jack H. Berger, pro se.

BROGAN, J. Defendant-appellant served as an elected judge of the Kettering Municipal Court from January 1, 1966 until January 1, 1978. During his tenure as judge he performed marriage ceremonies, pursuant to R.C. 1901.14, and accepted money for performing such ceremonies. Appellant did not turn these monies over to the clerk of courts as required in R.C. 1901.14.

In February 1980 plaintiff-appellee filed this action seeking to recover those monies accepted by appellant for performing marriages. The case was ultimately assigned to visiting Judge Joseph B. Grigsby.

After pretrial conferences, appellant filed an affidavit of bias and prejudice against Judge Grigsby; this affidavit of bias and prejudice was denied by Chief Justice Frank D. Celebrezze on January 5, 1981.

The matter was set for trial on April 6, 1981 before a jury in the Montgomery County Court of Common Pleas. On March 13, 1981 appellee filed a motion for summary judgment supported by a memorandum of law, affidavits, depositions and the pleadings. On April 6, 1981 Judge Grigsby rendered his opinion that there was no genuine issue of material fact; he found as a matter of law that the monies paid to appellant for performing marriages were in fact fees, and granted appellee's motion for summary judgment. It is from that decision that appellant brings this appeal.

I

"The Chief Justice of the Supreme Court of Ohio erred in assuming he had discretion to rule upon the issue of the bias and prejudice of the judge assigned to hear this case thus violating the mandatory procedural provisions of Section 2701.03 of the Ohio Revised Code."

Authority to pass upon the disqualification of a judge of the court of common pleas is vested in the Chief Justice under Section 5(C), Article IV of the Ohio Constitution, which reads as follows:

"The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law."

Since only the Chief Justice or his designee may hear disqualification matters, the court of appeals is without authority to pass upon disqualification or to void the judgment of the trial court upon that basis. Beer v. Griffith (1978), 54 Ohio St. 2d 440 [8 O.O.3d 438].

The first assignment of error is without merit.

II

"In the event this court finds that the

provisions of Section 2701.03 of the Ohio Revised Code are not mandatory, then the defendant-appellant alleges that the Chief Justice of the Supreme Court of the state of Ohio erred in ruling that even though a trial judge refers to a party as a 'goddamned thief' or a 'goddamned crook' he is still not demonstrating any bias or prejudice which would mandate his removal from hearing the issues in the cause."

For the reasons stated in our review of the first assignment of error, this assignment is also without merit.

## III

"The trial judge erred in his unsolicited opinion of September 8, 1980, that no matter what the defendant called money received by him incident to performing wedding ceremonies, it was still 'fees' within the purview of Section 1901.14 of the Ohio Revised Code and should therefore have been paid to the clerk of courts for transmittal to the city of Kettering."

The court can find no meaning to this assignment of error but will address the issue of interpretation of "fees" in the fourth assignment of error. The third assignment of error is without merit.

## IV

"The trial court erred in granting summary judgment to the plaintiff-appellee when there were in reality several issues of fact that required determination by a jury."

The trial court entered a summary judgment on the motion of the appellee after having considered the pleadings, the affidavit and deposition of the appellant, and other affidavits of court personnel. The court did not indicate its reason for finding no issues of fact or its conclusions of law in entering said judgment. Appellant contended in his affidavit and deposition that monies he received for marriage were gratuities and not charges or "fees."

The trial court's position appears clearly defined in its judgment entry on appellant's motion for a protective order from releasing his amended federal income tax returns for the years he performed marriage ceremonies in his capacity as a judge.

Judge Grigsby stated on page 3 of the judgment entry, "In my opinion, a marriage fee is an amount of money, certain or uncertain, received by the judge acting as the official witness for the state when the persons make their marriage promises. That such fees are income and not a gratuity so far as tax law is concerned has been settled since the year after the Income Tax Amendment." (Emphasis added.)

The trial court further explained its position concerning its interpretation of the word "fee." It reasoned that to claim the word "fee" refers only to a statutory charge ignores the common usage of that term in relation to compensation for professional services, particularly physicians and attorneys. The word "fee" in R.C. 4731.22(B)(4) and (B)(14) referring to fee splitting can only refer to compensation. The word "fee" in the Canons of Ethics and Judicial Canons can only refer to money received as recompense for services. It is in that sense the term "marriage fees" is used in R.C. 1901.14, and it is in that sense "fees or perquisites" is used in Section 6, Article IV of the Constitution of Ohio. The word "fee" is also used in the sense of compensation when referred to in the Code of Professional Responsibility.

The city of Kettering seeks to recover "fees" under R.C. 1901.14, which read as follows during the period in question:

"Municipal judges have further powers and duties as follows:

"(A) To perform marriage ceremonies, take acknowledgment of deeds and other instruments, administer oaths, and perform any other duties which are conferred upon judges of county courts;

"All fees, including marriage fees,

collected by a municipal judge when not connected with any cause or proceeding pending in the municipal court, shall be paid over to the clerk of the municipal court to be paid to the city treasury;

"(B) To adopt, publish, and revise rules for the regulation of the practice and procedure of their respective courts, and for the selection, and manner of summoning persons to serve as jurors in said court;

"(C) To adopt, publish, and revise rules relating to the administration of the court;

"(D) On or before the last day of January of each year, the court shall render a complete report of its operation during the preceding year to the legislative authority and to the board of county commissioners of each county within its territory. Such report shall show the work performed by the court, a statement of receipts and expenditures of the civil and criminal branches, respectively, the number of cases heard, decided, and settled, and such other data as the supreme court, the secretary of state, the legislative authority, and the board of county commissioners requires."

A fee is a *charge* fixed by law for the service of a public officer or for the use of a privilege under the control of the government whereas the term "costs" means, in a general sense, expense incurred in litigation. 32 Ohio Jurisprudence 2d, Judges, Sections 56-59; see, also, *Ft. Smith Gas Co.* v. *Wiseman* (1934), 189 Ark. 675, 74 S.W.2d 789.

In *People* v. *Goulding* (1936), 275 Mich. 353, 266 N.W. 378, 379, the court held a "fee" was "a fixed charge or perquisite *charged* as recompense for labor and trouble, * * * a reward, compensation, or wage given" to a person "for something done or to be done." (Emphasis added.)

Ballantine's Law Dictionary (3 Ed. 1969), defines "fee" as a "charge made for services of a professional man, such as a lawyer, physician, or abstracter." A

"fee" has been further defined as a charge imposed such as upon a student for an incidental such as a fee for the use of a library or laboratory, a student union fee, or matriculation fee. 15A American Jurisprudence 2d, Colleges and Universities, Section 19. Roget's Thesaurus defines "fee" as a fixed amount of money charged for a privilege or service.

Appellant contends he did not charge anyone for marrying them but received monies gratuitously from the parties he married. Webster's defines "gratuity" as something given voluntarily or over and above what is due usually in return for or in anticipation of service. Webster's Third New International Dictionary defines "gratuitous" as something "given freely or without recompense; granted without pay, or without claim or merit."

A "fee bill" is a schedule of the fees to be charged by clerks of courts, sheriffs, or other officers, for such particular service in the line of their duties. *Farris* v. *Smithpeter* (1914), 180 Mo. App. 466, 166 S.W. 655.

R.C. 1901.26 establishes how costs and fees shall be fixed in municipal courts, and reads, in pertinent part, as follows:

"Costs in a municipal court shall be fixed and taxed as follows:

"(A) The municipal court, by rule, may establish a schedule of fees and costs to be taxed in any action or proceeding, either civil or criminal, which shall not exceed the fees and costs provided by law for a similar action or proceeding in the court of common pleas."

In the matter *sub judice,* there is no evidence that the Kettering Municipal Court established by rule any fees for marriages. Indeed, if marriages were performed by the judge of the Kettering Municipal Court, it would appear no fee could be collected as there was no rule authorizing its collection.

R.C. 2303.20 establishes a fee schedule for the courts of common pleas, and reads, in pertinent part, as follows:

"The clerk of the court of common

pleas shall *charge* the following fees and no more:

"(A) Fifteen dollars for each cause which shall include:

"(1) Docketing in appearance docket;

"(2) Filing necessary documents, noting the filing of such documents, except subpoena, on the appearance docket * * *." (Emphasis added.)

An examination of this section indicates "fees" under R.C. 2303.20 are fixed and must be charged by the clerk of courts.

In *Roberts* v. *Commr.* (C.A. 9, 1949), 176 F.2d 221, the essential question for determination was whether tips are income. Petitioner challenged the regulations upon the ground that tips are gifts under Section 22(b)(3) of the Internal Revenue Code, Section 22 (b)(3), Title 26, U.S. Code. The court conceded a payment cannot, at the same time, be a gift and income. *Bogardus* v. *Commr.* (1937), 302 U.S. 34. However, that norm is applicable only in case of genuine gifts. Generally courts insist that the essential characteristic of a gift—absence of consideration—be present. *Blair* v. *Rosseter* (C.A. 9, 1929),33 F.2d 286. It would seem a tip may range from a pure gift out of benevolence or friendship to a compensation for a source measured by its supposed value but not fixed by an agreement. Most often the term is applied to what is paid a servant in addition to the regular compensation for his service, to secure better service or in recognition of it. *Roberts, supra,* at 224.

The court in *Roberts,* at page 225, went on to explain:

"We believe that these decisions, insofar as they regard tips as additional compensation, either directly or by inference, accord with the general nature of tipping, as we have outlined it. More, a contrary conclusion classifying them as gifts would go counter to the decisions already adverted to, which make absence of consideration the essential characteristic of a gift. A gift 'denotes * * * the receipt of financial advantages gratuitously.' *Helvering* v. *American Dental Co.,* 1943, 318 U.S. 322, 330, 63 S. Ct. 577, 581, 87 L.Ed. 785.

"In tipping, the financial advantage is conferred on the basis of *a consideration which is related to service.* This makes it clearly income. *United States* v. *McCormick,* 2 Cir., 1933, 67 F. 2d 867 was a prosecution for willful failure to file an income tax return. The defendant was a deputy city clerk, authorized to perform marriage ceremonies, who was paid a salary by the City, but who also received 'voluntary contributions' from bridegrooms after performing marriage ceremonies. To the defense that the monies so received by him were 'gifts', as to which there was no obligation to make a return, the Court gave answer: 'It is suggested that these contributions were in the nature of gifts, and, under section 213(b)(3) of the Revenue Act of 1926 (26 U.S.C.A. Sec. 22[b][3]), were not to be included in gross income. While perhaps there was no consideration (lawful or unlawful) for these payments, there was evidence that they could not be regarded as voluntary gifts, for the contributions were made in order to obtain the marriage certificates promptly and without criticism by McCormick. Many of the payments were practically extorted in order that the married couples might get their certificates at once and avoid the embarrassment of criticism for stinginess. We said in *Weagant* v. *Bowers,* 2 Cir., 57 F. 2d 679, at page 682, that mere absence of a legal consideration or duty to pay does not make a payment a gift within the meaning of the Revenue Act; that "an intention to make a gift must be established." ' *United States* v. *McCormick,* 2 Cir., 1933, 67 F. 2d 867, 869. This accords with the view of the Supreme Court expressed in *Old Colony Trust Co.* v. *Commissioner,* 1929, 279 U.S. 716, 730, 49 S. Ct. 499, 504, 73 L. Ed. 918: 'The payment for services, even though entirely voluntary, was nevertheless compensation

within the statute.' (And see, *Davis* v. *Commissioner,* 6 Cir., 1936, 81 F. 2d 137, 138).

"But if the problem be considered from the standpoint of the recipient, the result is the same. Tips are 'income.'

"The word 'income' has a broad meaning in income tax legislation. Its classic definition is still the all-inclusive one of 'gain derived from capital, from labor, or from both combined.' *Eisner* v. *Macomber,* 1920, 252 U.S. 189, 207, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A.L.R. 1570. It is 'income as the word is known in the common speech of men.' *United States* v. *Safety Car Heating & Lighting Co.,* 1936, 297 U.S. 88, 99, 56 S. Ct. 353, 358, 80 L. Ed. 500. And in applying these criteria, 'the revenue laws of the United States are not over-squeamish.' Sibley, C.J. in *Alexandria Gravel Co.* v. *Commissioner,* 5 Cir., 1938, 95 F. 2d 615, 616."

In *United States* v. *Burdick* (C.A. 3, 1954), 214 F. 2d 768, the court, at pages 771-772, held:

"* * *whether the receipts are gifts is primarily a question of fact to be resolved upon the peculiar circumstances of the case, the mere fact that the payments were voluntary does not establish them as gifts; if the payments were made without a donative intent and as compensation for services they constitute taxable income. The term 'gift' as used in the revenue statute 'denotes * * * the receipt of financial advantages gratuitously.'

"The testimony fully established that defendant's unreported receipts, which he treated as 'gifts' were compensation for services rendered or to be rendered, even though the payments were voluntarily made. They could, at the least, be broadly identified as 'gratuities' or 'tips' and it is well-settled that such receipts are not gifts, but taxable income."

In the matter *sub judice,* appellant clearly regarded the money given him by the marriage couples as income, as he reported them as such on his amended tax returns. Thus the cases cited by the ap-pellant regarding gifts amd donative intent are clearly inapposite to the issue at hand. However, while gratuities are income they may or may not be "fees" as contemplated by the legislature in R.C. 1901.14.

The trial court apparently placed emphasis on Section 6(B), Article IV of the Constitution of Ohio which states, "Judges shall receive no fees *or* perquisites * * *." The trial court appears to equate the term "perquisites" with the word "fees."

All of the definitions of the term "perquisite" contemplate a profit to be secured by the officer out of the office he occupies, in addition to his fixed compensation. A "perquisite" is something gained from a place of employment over and above the ordinary salary or fixed wages for services rendered, especially a fee allowed by law to an officer for a specific service. Hence, the reimbursement of a member of the legislature for his actual expenses does not fall within the definition of the word "perquisite." *State, ex rel. Harbage,* v. *Ferguson* (1941), 68 Ohio App. 189 [22 O.O. 139].

It is clear, as the trial court noted, appellant would not have received any money from the marriage couples but for his role as a judicial officer in solemnizing a marriage. To the extent that appellant kept any monies for having performed the marriages, he was violating the constitutional mandates of Section 6, Article IV of the Ohio Constitution.

In *Manuel* v. *Manuel* (1862), 13 Ohio St. 458, 464, the court held:

"In construing statutes, courts are ordinarily to be governed by the plain meaning of the words used by the legislature, and if the sense be apparently plain, it is not to be varied by construction without strong reason."

We are constrained to agree with appellant that the word "fee" given its ordinary meaning conveys a fixed charge as opposed to "monies given voluntarily or gratuitously in reward for services."

However, may appellant keep the monies given gratuitously to him for his role in performing marriages? We think not. To decide otherwise would permit appellant to violate his oath of office and the Constitution of this state.

The legislature has clearly spoken as to the responsibilities of other municipal employees. R.C. 705.25 reads:

"The salary of an elective officer shall not be changed during the term for which such officer was elected.

"All fees and perquisites appertaining to any municipal office or officer shall be paid into the treasury of the municipal corporation, and shall be credited to the general fund. No officer or employee of the municipal corporation shall receive otherwise than as the representative of the municipal corporation and for the purpose of paying it into such treasury any fee, present, gift, or emolument, or share therein, for *official services*, other than his regular salary or compensation. Any officer violating this section shall thereby forfeit his office. No member of the legislative authority or other officer or employee thereof shall receive compensation for services rendered in any other department of the municipal corporation, nor shall they or any other officer, clerk, or employee of the municipal corporation act as agent or attorney for any person, company, or corporation, in relation to any matter to be affected by action of the legislative or any other department, or by the action of any officer of the municipal corporation. The violation of this section is cause for removal." (Emphasis added.)

We believe this section is highly instructive of the intent of the legislature regarding the use of an official position to obtain financial advantage. Thus, while R.C. 1901.14 regarding "fees" is not the appropriate vehicle for collecting "gratuities" received by appellant, the city has a right to recover these monies. R.C. 1901.31(F) provides: "The clerk of the municipal court shall receive and collect all costs, fees, fines, bail, and *other*

moneys payable to the office or to any officer of the court * * *." (Emphasis added.) Mr. Berger in his role as a municipal judge when he received monies for performing his judicial office held said sums as a fiduciary for the city, and he must now be held accountable for payment.

The fourth assignment of error is thus overruled.

## V

"The trial court erred in concluding that because the defendant-appellant was a judge he was in a position of trust and he therefore had no right to assert the defense of the statute of limitations, Section 2305.07 Ohio Revised Code, or any other statute of limitations applicable to actions brought against him."

The statute of limitations can run against a municipal corporation. *Smith* v. *Reed* (1940), 67 Ohio App. 511 [21 O.O. 355]. In *Smith* a taxpayer brought suit on behalf of a municipality to recover fines which had been collected and retained by the mayor of the city during his term of office. The defendant mayor asserted as a defense that the city could not recover the money from him because the statute of limitations applicable to such action had run and the city was therefore barred from proceeding further. The Hamilton County Court of Appeals cited *State, ex rel. Bd. of Edn.,* v. *Gibson* (1935), 130 Ohio St. 318 [4 O.O. 352], as controlling. In *Gibson,* the court held a board of education or school district, clothed with the capacity to sue or be sued, was thereby rendered amenable to the laws governing litigants, including the plea of the statute of limitations. Also the court in *Gibson,* in paragraph three of the syllabus, stated, "[w]here a statute does not expressly exempt a subordinate political subdivision from its operation [the statute of limitations], the exemption therefrom does not exist." The court in *Smith* stated if the statute of limitations runs against a board of education, by parity of reasoning it

should run against a municipal corporation, both being subordinate political subdivisions of the state. 67 Ohio App. at 512. We agree with the reasoning of the *Smith* decision and so hold the statute of limitations can run against a municipal corporation.

The appellee contends the appellant fraudulently converted marriage fees which were to be turned over to the clerk of the municipal court. The statute specifies that a cause of action for fraud shall not accrue until the fraud is discovered. R.C. 2305.09. Hence, the statute of limitations does not begin to run against a cause of action for fraud until the discovery. This savings clause of the statute is a substantial embodiment of the rule applied by courts of equity in suits for relief on the ground of fraud, *Combs* v. *Watson* (1877), 32 Ohio St. 228, and the action is not barred until four years from that date, *Loffland* v. *Bush* (1875), 26 Ohio St. 559. The doctrine is grounded not so much on the principle that the act of the debtor stops the statute from running, as on the principle that the defendant is not permitted to avail himself of his own wrong. *Kilbreath* v. *Fosdick* (1878), 6 Dec. Rep. 629.

What is "discovery"? It is actual discovery, or what might by the exercise of due diligence have been discovered that will cause the statute to begin to run. *Stivens* v. *Summers* (1903), 68 Ohio St. 421. If by an ordinary degree of prudence the fraud could have been discovered, such opportunity is equivalent to knowledge. *Duhme* v. *Mehner* (1896), 3 N.P. 266; *Warner* v. *Republic Steel Corp.* (S.D.N.Y. 1952), 103 F.Supp. 998 [48 O.O. 470].

Appellant contends the clerk of the Kettering Municipal Court or the city administration should have known that he was unlawfully retaining marriage gratuities and taken action prior to 1977. It is however a well-established principle of law that public officials are presumed to have acted properly and followed the law. If appellant however can overcome this presumption by proof that city officials knew he was pocketing marriage gratuities and did nothing the statute of limitations may have run depending on the date of discovery. Therefore, this matter should be remanded to the trial court for a determination of when if ever, the city discovered or should have discovered appellant was collecting "gratuities" or "fees" for which he was failing to make an accounting to the clerk of courts as required by the statute.

The fifth assignment of error is well taken.

## VI

"The trial court erred in its ruling on summary judgment that the defense of laches was not available to the defendant-appellant in this case."

Laches has been defined as the neglect to assert a right under such circumstances, and for such length of time, as when not induced by fraud or otherwise shown to be justified, will lead a court of equity to refuse its aid. *Russell* v. *Fourth Natl. Bank* (1921), 102 Ohio St. 248. The general principle founded upon public policy that laches is not imputable to the government may be invoked by municipal corporations where strictly sovereign or public rights are involved. *Mt. Vernon* v. *Berman & Reed* (1919), 100 Ohio St. 1, although not ordinarily where the right is proprietary in nature.

In addition although the equitable defense of laches is clearly distinguishable from that of the statute of limitations, it nonetheless has many similar characteristics, particularly where a fraud or a fraudulent concealment of wrongful acts is involved. The most memorable equitable maxim learned by every first year law student is "he who comes seeking equity must come with clean hands." In order to have any standing to successfully assert an equitable defense, *i.e.*, laches, one must come with clean hands, and if he has violated conscience or good

faith or has acted fraudulently, equitable release in defenses are not available to him.

The city alleges appellant acted fraudulently in converting marriage fees to his own benefit. Appellant by his own admission accepted gratuities for performing his judicial role in solemnizing marriages. This acceptance violates his constitutional obligation under the Constitution of Ohio and he can hardly be said to be in court with clean hands. He thus has no standing to assert the doctrine of laches.

The sixth assignment of error is overruled.

## VII

"The trial court erred to the prejudice of the defendant-appellant by denying him his day in court wherein, other members of the judiciary would have established the custom and usage in the area of the term 'fees' as it is used in Section 1901.14 of the Ohio Revised Code."

A motion for summary judgment was before the court for disposition. Nothing prevented the appellant from submitting affidavits of other municipal judges as to their "custom" or "usage" of the term "fees" under R.C. 1901.14. However, the trial court made an independent judgment of the meaning of the word "fees" in the statute, and he interpreted it to include all forms of compensation, including "gratuities." This was a question of law, not fact, and he surely was not in need of advisory opinions from other municipal judges as to the meaning of "fees." Appellant was free to submit any case authority on the question of law before the court.

The seventh assignment of error is overruled.

## VIII

"The trial court erred in its determination of the amount of damages suffered by the plaintiff-appellee by taking the calculations of the plaintiff-appellee's counsel and not hearing or considering any evidence of the defendant-appellant as to those years before there were tax returns or depositions upon which to base a conclusion."

Appellee's motion for summary judgment established the existence of the following material facts:

(A) Appellant was a judge of the Kettering Municipal Court from January 1, 1966 through December 31, 1977.

(B) During his tenure as judge the marriage records of Montgomery County showed that appellant performed four hundred sixty-eight marriages.

(C) Appellant's deposition and amended federal tax returns indicated that in approximately eighty percent of these marriages he had received money.

(D) That the average payment for such services was $25.

(E) None of the money appellant received for performing marriages was turned over to the clerk of the court.

(F) Four hundred and sixty-eight marriages times eighty percent equals three hundred seventy-four. Three hundred and seventy-four marriages times $25 per marriage equals $9,350.

These facts as set forth in appellee's motion for summary judgment being established, the only remaining question to be decided was one of law, *i.e.,* were the monies received by appellant "fees" and therefore required to be paid into the clerk of courts under R.C. 1901.14.

We have previously addressed the issue of "fees" vis-a-vis gratuities earlier in this opinion.

The determination of damages to be $9,350 is consistent with the evidence before the court. We find no error in the computation of damages. The eighth assignment of error is overruled.

The judgment of the trial court is reversed and remanded to that court for a determination of whether if at all the statute of limitations ran on the action pending before the court.

*Judgment reversed*
*and cause remanded.*

PHILLIPS and WILSON, JJ., concur.

WILSON, J., concurring. In sustaining appellee's motion for summary judgment the trial court in effect held that under the facts of this case "gratuities" are "fees" as a matter of law. I disagree. In my view the material facts in dispute preclude the granting of summary judgment. I concur in the reversal and remand.