THE STATE, EX REL. CITY IRON WORKS, INC., APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO; SPENCER, APPELLANT.

2

(No. 77-288—Decided October 12, 1977.)

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey* and *Mr. John W. Zeiger,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. James R. Piercy,* for the Industrial Commission.

*Ticktin, Baron, Kabb & Valore Co., L. P. A.,* and *Mr. Kenneth S. Kabb,* for appellant.

WILLIAM B. BROWN, J. The issue presented by this cause is whether mandamus should lie to direct the Industrial Commission to vacate its specific safety requirement violation award order issued in 1973.

It is established law that mandamus will not issue to vacate an order of the Industrial Commission unless that order constitutes an abuse of discretion. *State, ex rel. Ruggles,* v. *Stebbins* (1975), 41 Ohio St. 2d 228, 229; *State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128, 130; *State, ex rel. Wilms,* v. *Blake* (1945), 144 Ohio St. 2d 619, 622.[1] Reviewing courts will find such an abuse of discretion only when there is no evidence to support the commission's determination. See *State, ex rel. Allied Wheel Products,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50.

In the instant cause, the Industrial Commission based its award for violation of specific regulations on Sections 03.05, 03.09 and 07.06 of Bulletin IC-3 of the Code of Specific Safety Requirements Relating to Construction. IC-3-

---

[1] The power of the Industrial Commission to determine whether a worker's injuries are due to an employer's violation of a specific safety requirement derives from Section 35, Article II of the Ohio Constitution, which provides, in pertinent part:

"Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees."

03.05 sets forth the dimensions of "standard guard railings" and the materials to be used in their construction.[2] IC-3-03.09 and 3-07.06 require that such railings be erected around certain construction site hazards. Those hazards include "the unused sides of openings in roofs and floors unless covering is provided" (IC-3-03.09) and "the unprotected sides of all scaffolds, ramps, runways and platforms which are ten (10) feet or more above the ground" (IC-3-07.06). Spencer fell from the *edge* of the roof of the building under construction. The question before this court, therefore, is whether the space around the edge of a roof is an opening pursuant to IC-3-03.09 or the roof itself is a platform, scaffold, ramp or runway pursuant to IC-3-07.06. The Industrial Commission's specific safety requirement regulations are subject to the ordinary rules of statutory construction. *State, ex rel. Miller Plumbing Co.,* v. *Indus. Comm.* (1948), 149 Ohio St. 493, 497. One cardinal rule of statutory construction is that the "court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged." *Wachendorf* v. *Shaver* (1948), 149 Ohio St. 231, paragraph five of the syllabus.

IC-3-03.09 provides, in pertinent part:

"Standard guard railings and toe boards shall be provided around the unused sides of openings *in* roofs and floors *unless covering is provided * * *.*" (Emphasis added.)

IC-3-03.09 falls, logically and grammatically, into two parts. The first requires the installation of guard railings around openings in roofs and floors; the second relieves

---

[2]IC-3-03.05 provides:

"Standard guard railing shall be constructed as a substantial barrier, securely fastened in place and free from protruding objects such as nails, screws, and bolts to protect openings or prevent accidental contact with some object, which barrier shall consist of a top rail not less than forty-two (42) inches above the working level, and unless the space between the top rail and the working level is covered with substantial material, an intermediate rail. * * *"

employers from that duty if the openings are covered. Read as a whole, the regulation calls for the erection of standard guard rails around *uncovered* openings *in* roofs and floors. The unlimited space *beyond* a roof or floor is clearly not an opening *in* that roof or floor. Moreover, it cannot be covered. The Industrial Commission's definition of "opening" cannot be reconciled with the clearly expressed intent of the regulation's drafters. The Court of Appeals correctly determined, therefore, that the Industrial Commission had no evidence to support its finding that City Iron Works violated IC-3-03.09.

The second safety regulation which the Industrial Commission found City Iron Works to have violated is IC-3-07.06. That rule provides, in pertinent part:

"* * * standard guard railing and toe boards shall be provided on the unprotected sides of all scaffolds, ramps, runways and platforms which are ten (10) feet or more above the ground or supporting area * * *."

If City Iron Works violated IC-3-07.06, as the Industrial Commission maintains, the roof from which Spencer fell must be a platform, scaffold, ramp or runway. The roof is clearly not a scaffold, ramp or runway.[a] Therefore, if the Industrial Commission's finding is to be valid, the roof must be a platform pursuant to IC-3-07.06.

A "platform" is defined in IC-3-01.02 (HHHH) as:

"the temporary flat working surface used to support employees and/or material and/or equipment."

Although the roof in the instant cause is flat, it is not subject to the requirements of IC-3-07.06. It is not temporary, and it is not a working surface. The roof was designed to last a significant number of years. Its function is to provide protection for the interior of the building. The roof was not designed to be destroyed or to be disassembled

[a]Webster's Third New International Dictionary defines a runway as "a way or gauged track," a ramp as a "sloping floor or walk leading from one level to another," and a scaffold as a "temporary or moveable platform * * * supported by a wood or metal framework * * * or suspended * * * and used by workmen * * *."

and removed once construction ended, as are the temporary working platforms, scaffolds, ramps and runways listed in IC-3-07.06. Indeed, in order to uphold the Industrial Commission's finding that the roof in the instant cause is a platform, it would be necessary for this court to construe the phrase "temporary flat working surface" to mean "a flat surface on which one is working temporarily." Since the language of the regulation is clear, we decline to so construe it. *Wachendorf, supra.* We find, instead, that the roof in the instant cause is not a platform subject to the guard rail requirements of IC-3-07.06.

Because the space around the edge of a roof is not an opening pursuant to IC-3-03.09 and the roof is not a platform pursuant to IC-3-07.06, the commission had no evidence on which to base its finding that City Iron Works violated those regulations, and it abused its discretion when it ordered an award for a specific safety regulation violation against that employer. The Court of Appeals correctly determined, therefore, that mandamus should issue to vacate the commission's award.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Celebrezze, P. Brown, Sweeney and Locher, JJ., concur.