**TABER et al., Appellants and Cross–Appellees,**

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellee and Cross–Appellant.**

[Cite as *Taber v. Ohio Dept. of Human Serv.* (1998), 125 Ohio App.3d 742.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97API07–918.

Decided March 31, 1998.

*Hahn, Loeser & Parks, L.L.P., David C. Weiner, Deborah A. Coleman, Ann E. Bennington* and *James E. Morgan,* for appellants and cross-appellees.

*Betty D. Montgomery,* Attorney General, and *Susan M. Sullivan,* Assistant Attorney General, for appellee and cross-appellant.

PETREE, Judge.

This class action involves a dispute between the plaintiff class (collectively, "plaintiffs"), and defendant, the Ohio Department of Human Services over whether or not defendant properly determined plaintiffs' eligibility for Ohio's General Assistance ("GA") program and accurately computed the amount of plaintiffs' benefits during the 1993 fiscal year. Plaintiffs filed this action in the Court of Claims of Ohio on March 19, 1993, seeking relief on behalf of those similarly situated who had been denied GA benefits, or who had their benefits reduced, as a result of defendant's alleged failure to properly apply former R.C. 5113.031.[1]

---

1. On March 1, 1994, the parties stipulated that the requirements of Civ.R. 23(A), (B)(2), and (B)(3) had been satisfied. The parties also agreed to certification of the following class:

Agreed facts were submitted for the court's consideration, reply and response memoranda were filed, and, on May 26, 1994, the court heard oral argument on the parties' cross-motions for summary judgment. Both motions were subsequently denied, and, on July 22, 1994, the court took the matter under consideration on stipulated facts in lieu of trial.

On August 9, 1995, the court issued an interlocutory judgment entry in which it found that defendant had not computed plaintiffs' GA benefits for the 1993 fiscal year in a manner that conformed with former R.C. 5113.031.[2] The court then instructed defendant to recalculate plaintiffs' benefits for the relevant time period. Defendant submitted an initial set of calculations to the court on December 11, 1995. Plaintiffs objected to the manner in which those calculations had been made, and, on February 21, 1996, the court issued a subsequent order, directing defendant to (1) determine who "was eligible to receive GA benefits for fiscal year 1993 based upon the total number of applicants applying for GA benefits during fiscal year 1993," and (2) estimate "the amount of benefits each eligible applicant would receive during fiscal year 1993."

In compliance with the court's instructions, defendant filed the results of its amended study on March 22, 1996. Plaintiffs again objected, and, on May 30, 1996, the court issued an order that contained a detailed formula to be used by defendant when recalculating plaintiffs' benefits. The court also concluded that defendant had been unable to satisfactorily determine which applicants would have been eligible for benefits. Accordingly, the court decided that each class member should be required to reapply. In order to implement its ruling, the court ordered the parties to submit a plan for approval giving each member of the plaintiff class notice of his or her right to reapply for benefits.

On June 11, 1997, the Court of Claims adopted defendant's proposed order, notice, public assistance letter, and retroactive GA worksheet to be distributed to members of the plaintiff class. At that time, the court also concluded that defendant had complied with former R.C. 5113.031, although it had determined plaintiffs' eligibility for assistance benefits according to a modified eligibility calculation of its own creation.

---

"[E]very person for whom an application for participation in the General Assistance Program ('GA') Program was denied, or monthly GA grant was reduced, or participation in GA was terminated, for any month during the period July 1, 1992, through June 30, 1993, as a result of the policies of Defendant Ohio Department Human Services concerning R.C. 5113.031(C) and (D), as enacted by Am.Sub.H.B. 298 (1992)."

**2.** Specifically, the court concluded that defendant had improperly separated gross monthly earned income from gross monthly unearned income when calculating the amount of GA benefits pursuant to former R.C. 5113.031.

As set forth above, the Court of Claims issued two substantive rulings in regard to former R.C. 5113.031. First, on August 9, 1995, the court concluded that defendant had improperly separated earned and unearned income when it determined the amount of plaintiffs' monthly GA cash stipends. Second, on June 11, 1997, the court found that defendant had correctly used a modified version of the eligibility test set forth in R.C. 5113.031 to determine plaintiffs' ability to participate in the GA program. Plaintiffs have appealed the court's June 11, 1997 entry and raise the following assignment of error:

"The Ohio Court of Claims committed reversible error when it held that the Ohio Department of Human Services complied with Ohio Rev.Code § 5113.031 in determining the eligibility for General Assistance benefits of the named Plaintiffs–Appellants and the class members they represent (collectively, the 'plaintiff class')."

Defendant cross-appeals from the court's August 9, 1995 interlocutory entry and asserts the following assignment of error:

"The Court of Claims erred in determining that cross appellant Ohio Department of Human Services violated former R.C. 5113.031 in the manner in which it calculated general assistance benefits (interlocutory judgment entry of August 9, 1995)."

Ohio's now extinct GA program was designed to provide basic medical benefits and a monthly financial stipend to individuals in need.[3] On July 26, 1991, the General Assembly restructured the program when it enacted Am.Sub.H.B. No. 298. Under the revised program, monthly benefits were reduced to six months out of any twelve-month period. At the end of the six-month period, benefits ceased.[4] Am.Sub.H.B. No. 298 also reenacted certain statutory provisions granting defendant the authority to adopt rules establishing application and verification procedures, as well as income, resources, citizenship, age, residence, and other eligibility requirements.

According to the stipulations filed with the trial court, defendant determined that the named plaintiffs Taber, Flory, and Bozick were not eligible for GA assistance because in each case, applying defendant's modified eligibility test, plaintiffs' monthly income exceeded a threshold amount known as the "payment standard." As in effect for the 1993 fiscal year, R.C. 5113.031(C) provided:

---

3. The GA program was eliminated in 1995 with the enactment of H.B. No. 117.

4. The General Assembly also enacted R.C. 5113.032 as part of Am.Sub.H.B. No. 298. As an incentive to find work, R.C. 5113.032 provided an additional seven months of GA benefits to recipients who obtained gainful employment during the initial six-month eligibility period.

"Beginning July 1, 1992, eligibility for assistance under this chapter shall be determined by subtracting an assistance group's countable income from the payment standard. If the assistance group's monthly countable income determined under division (D) of this section is less than the payment standard, the assistance group is eligible for assistance." 144 Ohio Laws Part III, 4373–4374.

Plaintiffs allege that the clear and express language of R.C. 5113.031 required defendant to use the method set forth in subsection (C) to determine plaintiffs' eligibility for assistance. Plaintiffs further allege that defendant violated the requirements of that section when it determined eligibility using a different method promulgated in Ohio Adm.Code 5101:1–23–057.

Perhaps the first principle of statutory construction is that the language used in a statute must be given its plain and ordinary meaning. *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 539 N.E.2d 103; *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 12 O.O.3d 1, 387 N.E.2d 1222; and *State ex rel. Harbage v. Ferguson* (1941), 68 Ohio App. 189, 22 O.O. 139, 36 N.E.2d 500. It is presumed that the entire statute is intended to have effect and meaning. R.C. 1.47(B); *Richards v. Market Exchange Bank Co.* (1910), 81 Ohio St. 348, 90 N.E. 1000. Accordingly, if possible, a statute must be construed so that some operative effect is given to every word used. *United States v. Nordic Village, Inc.* (1992), 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181; *State v. Arnold* (1991), 61 Ohio St.3d 175, 573 N.E.2d 1079. As the Supreme Court of Ohio explained in *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 574 N.E.2d 457:

"[A] court must first look to the language of the statute itself to determine the legislative intent. If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." *Id.* at 218, 574 N.E.2d at 461. See, also, *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381.

Likewise, if a statute is clear and unambiguous on its face, it "may not be restricted, constricted, qualified, narrowed, enlarged or abridged" under the guise of statutory construction. *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370; *State ex rel. City Iron Works v. Indus. Comm.* (1977), 52 Ohio St.2d 1, 4, 6 O.O.3d 37, 38, 368 N.E.2d 291, 292–293.[5]

---

5. We also note that when an appellate court is called upon to review a lower court's interpretation and application of a statute, the appellate court conducts a *de novo* review without deference to the trial court's determination. *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506, 664 N.E.2d 596, 597.

■ As worded, former R.C. 5113.031(C) stated simply that eligibility was to be determined by subtracting "countable income" determined under R.C. 5113.031(D), from the "payment standard."[6] Pursuant to R.C. 5113.031(C), an individual was deemed eligible for GA benefits if his or her countable income was less than the applicable payment standard. Conversely, an individual was not eligible for benefits if his or her countable income was greater than or equal to the applicable payment standard.

Under former R.C. 5113.031(D), "countable income" was to be determined according to the following calculation:

1. Multiply the payment standard by two,

2. Subtract the product determined under (1) from the assistance group's gross monthly income,

3. Multiply the difference calculated under (2) by four-tenths,

4. Subtract from the product determined under (3) any child care expenses. 144 Ohio Laws, Part III, 4374.

As stipulated, defendant's modified eligibility determination differed in several respects from the calculation set forth in R.C. 5113.031(D). Defendant determined eligibility in accordance with former Ohio Adm.Code 5101:1–23–057 1991–1992 Ohio Monthly Record 1775, and Section 5444.1 of the Ohio Public Assistance Manual, which provided as follows:

"In order to determine program eligibility for applicant GA and DA assistance groups, total all gross monthly earnings of each employed GA or DA assistance group member * * *. The first $75 of the gross income is deducted as a work expense disregard.

"If there are any child care costs paid directly by the assistance group, deduct the determined child care expenses from the gross income. * * *

"The remaining income is then added to the assistance group's other countable income (i.e., unearned income) and compared to the appropriate GA or DA payment standard. * * *

"If the assistance group is a GA assistance group for which program eligibility is determined to exist, the CDHS shall apply the provisions set forth in PAM Section 5444.5 to determine eligibility for GA benefits."

Defendant's manner of computing eligibility can therefore be illustrated by way of the following calculation:

---

6. R.C. 5113.031(A)(2) provides that " '[p]ayment standard' means the maximum monthly general assistance financial grant applicable to an assistance group."

1. Gross monthly earned income;

2. Subtract $75 work-expense disregard;

3. Subtract child care costs;

4. Add other countable income (unearned income);

5. Compare to payment standard.

As applied to plaintiff Taber, defendant's method of calculating eligibility produced the following result:

| | | |
|---|---|---|
| a. | Gross monthly earned income | $ 0 |
| b. | Subtract $75 | -75 |
| c. | Subtotal | $ 0 |
| d. | Subtract child care costs | -0 |
| e. | Subtotal | $ 0 |
| f. | Add unearned income | +378 [7] |
| g. | Countable Income | $ 378 |

Because Taber's countable income exceeded the $100 payment standard for a single individual, defendant determined that she was not eligible to participate in the GA program. In contrast, following the method set forth in former R.C. 5113.031, Taber's eligibility would have been calculated as follows:

| | | |
|---|---|---|
| a. | Payment standard for one person | $100 |
| b. | Multiply by two | x2 |
| c. | Subtotal | $200 |
| d. | Gross monthly income | $378 |
| e. | Subtract amount of line c. | -200 |
| f. | Subtotal | $178 |
| g. | Multiply by four-tenths | x.4 |
| h. | Subtotal | $ 71 |
| i. | Subtract child care costs | -0 |
| j. | Countable Income | $ 71 |

Under the statutory scheme, Taber would have been eligible for a benefit determination because her countable income was less than the applicable payment standard of $100.[8]

Defendant justifies the use of the modified eligibility test on the basis that the test was adopted pursuant to a valid exercise of the rulemaking authority

---

7. Taber's sole source of income was a monthly retirement payment of $378 from the Social Security Administration.

8. The different methods of calculating eligibility produce similar results when applied to each of the other named plaintiffs.

delegated by R.C. Chapter 5113. In support of this proposition, defendant directs our attention to former R.C. 5113.06(A), which provided:

"The state department of human services shall adopt rules establishing application and verification procedures, and income, resources, citizenship, age, residence, living arrangement, assistance group composition, and other eligibility requirements for general assistance." 144 Ohio Laws, Part III, 4376.

The delegation of rulemaking authority is generally thought to be necessary "because of the infinite detail essential in the consideration of an application and the interpretation of the law to concrete and specific circumstances and situations, the incorporation of which in the statute itself would be impracticable or impossible." *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 124, 36 O.O. 471, 473, 77 N.E.2d 921, 923. Moreover, it is generally accepted that " '[t]he purpose of administrative rulemaking is to facilitate the implementation of legislative policy.' " *Knutty v. Wallace* (1992), 84 Ohio App.3d 623, 627, 617 N.E.2d 783, 785, quoting *Carroll v. Dept. of Adm. Serv.* (1983), 10 Ohio App.3d 108, 10 OBR 132, 460 N.E.2d 704. However, as we explained in *Knutty:*

"It is not enough that appellee's rule is reasonable in light of the legislative intent if it contradicts express legislative language. '[B]ecause the power delegated is to administer rather than to legislate, the director may not promulgate rules which add to his delegated powers, no matter how laudable or sensible the ends sought to be accomplished.' " *Id.* at 627, 617 N.E.2d at 785, quoting *Carroll v. Dept. of Adm.* Serv. (1983), 10 Ohio App.3d at 110, 10 OBR at 133–134, 460 N.E.2d at 706–707.

While courts have frequently recognized the power of administrative agencies to promulgate regulations and rules of procedure in order to operate efficiently, "[t]he basic limitation on this authority is that an administrative agency may not legislate by enacting rules which are in excess of legislative policy, or which conflict with the enabling statute." *P.H. English v. Koster* (1980), 61 Ohio St.2d 17, 19, 15 O.O.3d 9 11, 399 N.E.2d 72, 74.

Having carefully examined the relevant statutory provisions, we find that the modified eligibility formula used by defendant during the 1993 fiscal year was in conflict with the express method of determining eligibility set forth in R.C. 5113.031. Additionally, we have been unable to locate any adequate statutory support for the argument that defendant acted within its discretion when it administratively redrafted the eligibility determination in the form set forth in Section 5444.1 of the Ohio Public Assistance Manual and Ohio Adm.Code 5101:1–23–057. Having ascertained that defendant' eligibility determination was not the result of valid rulemaking, we must conclude that the calculation is invalid, as it

conflicts with R.C. 5113.031(C). "A rule that is contrary to statute is invalid." *Hoover Universal, Inc. v. Limbach* (1991), 61 Ohio St.3d 563, 569, 575 N.E.2d 811, 816. See, also, *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 653 N.E.2d 349, holding that an agency may not enact administrative rules imposing additional requirements on applicants that are contrary to statute. Accordingly, we find that the Court of Claims erred when it determined that defendant had complied with the requirements of R.C. 5113.031 when it determined plaintiffs' eligibility for GA assistance.

In its cross-assignment of error, defendant claims that the trial court erred in finding that it had failed to comply with former R.C. 5113.031 when it calculated the amount of plaintiffs' GA benefits. Specifically, defendant's cross-appeal turns upon whether it was proper for defendant to separate gross monthly earned income from gross monthly unearned income in calculating the amount of plaintiffs' benefits.

As set forth in the stipulated facts, defendant treated earned and unearned income differently when computing the amount of benefits to be awarded pursuant to former R.C. 5113.031(D). Specifically, defendant calculated countable income for purposes of figuring monthly grant amounts in the following manner:

1. Multiply the payment standard by two,

2. Subtract the amount computed in (1) from the assistance group's monthly earned income,

3. Multiply the amount computed in (2) by four-tenths,

4. Subtract any child care expenses from the amount computed in (3),

5. Add any unearned income to the amount computed in (4).

The trial court accepted plaintiffs' argument that defendant did not have any statutory authority to separate earned and unearned income when calculating plaintiffs' assistance benefits pursuant to former R.C. 5113.031(D). However, the General Assembly specifically gave defendant the authority to administratively define "gross monthly income" for purposes of R.C. 5113.031.[9] Defendant did so in terms of "earned" and "unearned" income. "Earned income" was defined in Ohio Adm.Code 5101:1–23–055(C) as "payment received by an assistance group member for services performed as an employee or as a result of his being engaged in self-employment. Earned income includes wages, salary, commissions or profit from self-employment." 1991–1992 Ohio Monthly Record 887.

---

9. Former R.C. 5113.031(B) provided that "[t]he department of human services shall define 'gross monthly income' in rules adopted in accordance with Chapter 119. of the Revised Code." 144 Ohio Laws, Part III, 4373.

Conversely, Ohio Adm.Code 5101:1–23–055(B) defined "unearned income" as "all income that is not wages, or net earnings from self-employment. All income which does not meet the definition of earned income is considered unearned income." *Id.* at 886.

Upon review, we find that defendant acted within its discretion when it applied the income disregard provisions of former R.C. 5113.031 to earned income only. Former R.C. 5113.06(E) provided:

"As provided in Section 5113.031 of the Revised Code or in rules adopted by the state department, any person receiving general assistance may engage in temporary or partial employment and, while so employed, *shall have general assistance benefits adjusted accordingly after income disregards contained in Section 5113.031 of the Revised Code or rules adopted by the state department have been applied to the earnings received.*" (Emphasis added.) 144 Ohio Laws, Part III, 4378.

Former R.C. 5113.06 clearly stated that the benefit amounts of all recipients who had income from employment were to be adjusted by applying the "income disregards" contained in former R.C. 5113.031 to the "earnings received." Reading this in *pari materia* with R.C. 5113.031(B), we find that defendant acted within its discretion in defining gross monthly income in terms of "earned" and "unearned" income, as these definitions were in harmony with the directive of R.C. 5113.06(E) that benefit amounts be reduced by the amount of the earnings received by a recipient. As noted herein, R.C. 5113.06(A) authorized defendant to establish application and verification procedures encompassing income requirements. Here, unlike the position taken with the eligibility determination, defendant did not promulgate a method of calculating the amount of plaintiffs' benefits which was in excess of legislative policy, or which conflicted with the relevant statutory provisions. See *P.H. English, supra,* 61 Ohio St.2d at 19, 15 O.O.3d at 11, 399 N.E.2d at 74–75. Accordingly, we find that defendant acted within its delegated authority in separating earned and unearned income for purposes of calculating plaintiffs' GA benefits.

Therefore, for the foregoing reasons, plaintiffs' assignment of error is sustained and defendant's cross-assignment of error is also sustained. The judgment of the Court of Claims of Ohio is reversed, and this cause is remanded for further proceedings in accordance with the law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG and BOWMAN, JJ., concur.