WATSON GRAVEL, INC., Appellant,

v.

DIVISION OF MINES AND RECLAMATION, Appellee.

[Cite as *Watson Gravel, Inc. v. Div. of Mines & Reclamation* (1999), 133 Ohio App.3d 132.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA99–04–010.

Decided Aug. 23, 1999.

134

Jack F. Grove, for appellant.

Betty D. Montgomery, Attorney General, and Mark G. Bonaventura, Assistant Attorney General, for appellee.

WILLIAM W. YOUNG, Presiding Judge.

Plaintiff-appellant, Watson Gravel, Inc., appeals the judgment entry of the Clinton County Court of Common Pleas affirming the decision of the Reclamation Commission enforcing a stop work order issued by the chief of the Ohio Department of Natural Resources, Division of Mines and Reclamation ("DMR"). We reverse.

Watson Gravel is a licensed operator of surface mining operations within Ohio. Its president and chief operating officer is Ronald E. Watson. In 1994, Watson acquired a two-hundred-seventy-acre site at Haley and Gleason Roads in Wilson Township, Clinton County, Ohio. The property is presently being used for agricultural purposes, but Watson Gravel leases the mineral rights to the land.

In April 1997, Watson Gravel filed an application with the DMR pursuant to R.C. Chapter 1514 for a permit to surface mine limestone and topsoil on the property. The initial mining area was expected to be 21.8 acres located in the interior of the property. After the application was presented, Inspector Craig Simonson of DMR visited the property to check physical characteristics, environmental factors and other attributes of the property. Other than these visits by Simonson, no action was taken by DMR on Watson Gravel's application.

On August 1, 1997, Watson sent a letter to Lisa J. Morris, Chief of DMR. By this letter, Watson gave notice to DMR of:

"[His] intention to exercise [his] right to remove material to a limited depth (not to exceed five feet) within a confined area (less than one acre) pending issuance of the permit."

This amount was to be less than the amount R.C. 1514.01(A) and 1514.02(A) allow to be removed without a permit. Watson's reason for this action was that he had contracts to deliver topsoil, and the permit application process was delaying his ability to fulfill these contracts. On August 3 through 5, 1997, Watson removed one hundred fifty cubic feet of topsoil from a fifty-foot-by-twenty-seven-foot area, excavated to a depth of eighteen inches.

On August 5, 1997, Simonson returned to the property at the direction of his superiors, and noticed a Watson Gravel sign, a pick-up truck, and a front-end loader. No work was being done at the site. Simonson could not determine whether the equipment was being used for excavating or agricultural purposes. No limestone material had been excavated, and there was no evidence of blasting or stockpiling of mineral deposits. Simonson made a report finding that no surface mining had occurred.

On August 6, 1997, Chief Morris issued a stop-work order to prevent Watson Gravel from removing any further topsoil. This order alleged that Simonson's

inspection had revealed surface mining without a permit. Watson Gravel promptly filed an appeal to the Reclamation Commission, contending that the stop-work order was an unlawful exercise of authority by the DMR. See R.C. 1513.13.

On November 5, 1997, the Reclamation Commission held a hearing at which both parties presented testimony. On December 16, 1997, the Commission filed its order affirming the stop-work order. The Commission stated that the purpose of the exemption in R.C. 1514.01(A), which would allow a party to remove material without a permit, was intended for circumstances where "a person, who is not a miner, is removing material for some purpose other than the commercial production of that material." The Commission found that Watson Gravel's application had included an intent to remove topsoil, and that this application gave the DMR authority to prohibit Watson Gravel from engaging in any mining or removal operation pending a decision on Watson Gravel's application.

Watson Gravel appealed the decision of the Reclamation Commission to the common pleas court. On November 9, 1998, the court heard arguments on the appeal. On March 9, 1999, the court filed its judgment entry affirming the Commission's decision. The court found that Watson Gravel's excavation was surface mining, which required a permit. The court found that the Commission's order was supported by credible evidence, and not inconsistent with the law. Appellant appeals, raising a single assignment of error:

"The court of common pleas erred in affirming the Reclamation Commission's order affirming the chief's stop work order because the subject activity is specifically *exempt* from state regulation because the administrative record does not contain substantial, probative evidence which support a finding of illegal surface mining."

In its sole assignment of error, Watson Gravel contends that the common pleas court incorrectly determined that its excavation of topsoil was not exempt from permit requirements. Watson Gravel further argues that Chief Morris's stop-work order was an unlawful exercise of authority and was contrary to the facts before the DMR.

■ R.C. Chapter 2506 provides for the appeal of an administrative decision to the court of common pleas, and states that "the hearing of such appeal shall proceed as in the trial of a civil action." R.C. 2506.03(A). Although the hearing in the common pleas court is not *de novo*, it often resembles a *de novo* proceeding. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 852. In reviewing the administrative decision, the court of common pleas must determine whether "the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the prepon-

derance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The decision of the administrative body is presumed to be valid, and the burden of showing its invalidity is upon the contesting party. *Consol. Mgt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 240, 6 OBR 307, 309, 452 N.E.2d 1287, 1290. In making its determination, the court of common pleas must give consideration to the entire record and appraise the credibility of witnesses, the probative character of the evidence and the weight to be given it. *Dudukovich v. Lorain Metro. Housing Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 202, 389 N.E.2d 1113, 1117.

 If the common pleas court's decision is appealed, the appellate court must determine whether the court of common pleas applied the appropriate standard of review. *Id.* at 207–208, 12 O.O.3d at 202, 389 N.E.2d at 1117. Review by the court of appeals is limited in scope and the decision of the common pleas court must be affirmed "unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative and substantial evidence." *Kisil* at 34, 12 OBR at 30, 465 N.E.2d at 852. Included within the ambit of review by the appellate court is the question of whether the common pleas court abused its discretion. *Id.* at 34, 12 OBR at 30, 465 N.E.2d at 852, fn. 4.

R.C. 1514.02(A) provides:

"After the dates the chief of the division of mines and reclamation prescribes by rule pursuant to R.C. 1514.08 of the Revised Code, but not later than July 1, 1997, nor earlier than July 1, 1975, *no operator shall engage in surface mining or conduct a surface mining operation without a permit issued by the chief.*" (Emphasis added.)

R.C. 1514.01(A)(1) defines "surface mining":

"[A]ll or any part of a process followed in the production of minerals from the earth or from the surface of the land by surface excavation methods, * . * * and includes the removal of overburden for the purpose of determining the location, quantity, or quality of mineral deposits, * * * *but does not include* : * * * the removal of minerals to a depth of not more than five feet, measured from the highest original surface elevation of the area to be excavated, where not more than one acre of land is excavated during twelve successive calendar months." (Emphasis added.)

 Reading these two sections together, it is clear that an operator must apply for a permit for surface mining whenever minerals are to be removed from the land to a depth greater than five feet, measured from the highest original surface elevation, the area to be excavated is greater than one acre, and the excavation will take longer than twelve calendar months.

▊ Watson Gravel has removed approximately one hundred fifty cubic yards of topsoil from the property. The excavation comprised an area of fifty feet by twenty-seven feet and eighteen inches deep. This area is far less than the extent of excavation which would require a permit pursuant to R.C. 1514.02(A). Watson Gravel was not required to seek a permit to perform such a limited excavation of topsoil from the property.

The DMR nonetheless asserts that Chief Morris's stop-work order was issued pursuant to rules properly prescribed by R.C. 1514.08, rules that would limit Watson Gravel's right to undertake such an excavation. The DMR argues that once Watson Gravel applied for a permit to conduct surface mining, Watson Gravel acceded to the jurisdiction of the DMR, and that any operation by Watson Gravel, even one exempted by R.C. 1514.01(A), would require the approval of the DMR.

R.C. 1514.08 provides:

"The chief of the division of mines and reclamation may adopt, amend, and rescind rules in accordance with R.C. Chapter 119 of the Revised Code in order to prescribe procedures for submitting applications for permits, and amendments to plans of mining and reclamation; requesting inspection and approval of reclamation; paying permit and filing fees; and filing and obtaining the release of performance bonds deposited with the state. For the purpose of preventing damage to adjoining property or achieving one or more of the performance standards established in division (A)(9) of section 1514.02 of the Revised Code, the chief may establish classes of mining industries, based upon industrial categories, combinations of minerals produced, and geological conditions in which surface mining operations occur, and may prescribe different rules consistent with the performance standards for each class. For the purpose of apportioning the workload of the division between quarters of the year, the rules may require that applications for permits and annual reports be filed in different quarters of the year, depending upon the county in which the operation is located."

R.C. 1514.07 governs orders issued by the chief of the DMR:

"Each order of the chief of the division of mines and reclamation affecting rights, duties, or privileges of an operator or his surety or of an applicant for a permit or an amendment to a permit or a plan shall be in writing and contain a finding by the chief of the facts upon which the order is based."

R.C. 1514.07 also provides what information the chief of the DMR must include in any stop-work order:

"The order shall identify the operation where the violation occurs, the specific requirement violated, measure not performed, standard not achieved, or off-site

damage caused, and where practicable prescribe what action the operator may take to comply with the order."

 These sections make it clear that the chief of the DMR has the authority to promulgate rules governing the procedures for submitting to the DMR applications for surface mining, as well as inspections and fees related to these applications. The chief is not given authority to expand the jurisdiction of the DMR based upon the filing of an application. The chief may issue stop-work orders where those orders are supported by specific findings of violations of applications, or permit rules, or of the Revised Code. The chief may not issue stop-work orders for operations over which the DMR has no authority.

 Any asserted rule or procedure of the DMR that would place jurisdiction over the present excavation, based upon Watson Gravel's application, would unlawfully expand the authority of the DMR beyond that given by the General Assembly. The power given to the DMR is the power to administer, not legislate, and the chief of the DMR may not promulgate rules of policies that add to the DMR's delegated authority, no matter how laudable or sensible the ends sought to be accomplished. *Taber v. Ohio Dept. of Human Serv.* (1998), 125 Ohio App.3d 742, 750, 709 N.E.2d 574, 579. In short, the rules enacted by the DMR may not conflict with the enabling statute. *P.H. English, Inc. v. Koster* (1980), 61 Ohio St.2d 17, 19, 15 O.O.3d 9, 11, 399 N.E.2d 72, 74.

The stop-work order issued against Watson Gravel did not conform with the authority delegated by the Revised Code. R.C. 1514.01(A) is clear: any excavation that involves a removal of minerals less than five feet from the highest elevation of the site to be excavated, from an area of less than one acre, and over a period of time of less than twelve calendar months is exempt from the permit requirement of R.C. 1514.02(A). Such an excavation is not "surface mining" within the definition of R.C. 1514.01(A). The DMR is precluded from regulating such excavations.

Chief Morris's stop-work order is in direct conflict with these statutory provisions. By this order, the DMR is attempting to regulate an exempted activity. Furthermore, the determination expressed in the stop-work order that surface mining had occurred is completely unsupported. In fact, Simonson's report makes it clear that surface mining had not occurred on the property. Thus, the stop-work order is an unreasonable and arbitrary attempt by DMR to exercise its authority, and is contrary to law. The common pleas court therefore abused its discretion by affirming the Reclamation Commission's decision.

We find that the contested excavation is not surface mining as defined by R.C. 1514.01(A), and this operation does not require a permit pursuant to R.C. 1514.02(A). We further find that the common pleas court erred in finding that

the decision of the Reclamation Commission to enforce the stop-work order was supported by credible evidence and in finding that the stop-work order was not arbitrary, capricious or inconsistent with the law. Accordingly, Watson Gravel's assignment of error is sustained.

*Judgment reversed.*

WALSH and VALEN, JJ., concur.