OPINION *Page 2 
{¶ 1} Appellant InBev USA, LLC., appeals the March 24, 2006, Judgment Entry of the Stark County Court of Common Pleas, denying its motion for summary judgment and granting Appellee Esber Beverage Company's motion for partial summary judgment
 STATEMENT OF THE FACTS AND CASE {¶ 2} InBev USA ("InBev USA") is a Delaware limited liability company headquartered in Norwalk, Connecticut. It operates as an importer and brewer with exclusive rights to import, market, distribute, and sell certain brands of beer such as Becks, Labatt, Bass, Stella Artois, and Rolling Rock to distributors like defendants throughout the United States.
 {¶ 3} InBev USA, as it exists today, was formed through the merger of Labatt USA LLC ("LUSA") and Beck's North America ("BNA") into Latrobe Brewing Company ("Latrobe"). LUSA was a United States importer of several brands of beer, including Labatt's Blue, Boddington's, Lowenbrau, Stella Artois, and Bass Ale. BNA was the exclusive United States importer of such brands as Beck's Pilsner, Beck's Light, and Beck's Dark. Id. Latrobe was a domestic brewer of Rolling Rock beer. Before the merger, LUSA, BNA, and Latrobe each existed as separate legal entities but were wholly owned by InBev of Belgium.
 {¶ 4} In September 2004, InBev USA (formerly Labatt USA LLC), Latrobe Brewing Company ("Latrobe") and Beck's North America ("BNA") were wholly owned subsidiaries of InBev of Belgium, and InBev USA controlled distribution of the Labatt USA, Latrobe and BNA brands through a variety of distribution channels. As admitted by InBev USA, it had long been desirous of "reduce[ing] its wholesaler network on a *Page 3 
national basis," and the purported merger at issue in this case "was done in order to clean up the complex United States corporate structure."
 {¶ 5} On December 31, 2004, documents were filed with the Delaware Secretary of State's Office to (a) merge LUSA, BNA and other "Holding Companies" into Latrobe; and (b) change Latrobe's name to InBev USA, LLC.
 {¶ 6} For more than 40 years, Esber Beverage Company ("Esber") has acted as the exclusive distributor in specified territories of certain alcoholic beverage products brewed by InBev USA and its predecessors. Presently, Esber is the exclusive distributor of the Labatt, Boddingtons and Lowenbrau products in Stark County and eleven other Ohio counties. This long-standing franchise relationship exists by virtue of and is governed by the Ohio Alcoholic Beverages Franchise Act, R.C. § 1333.82, et seq. ("the Act").
 {¶ 7} Less than a week after the merger, on January 7, 2005, InBev USA informed Esber and its other Ohio wholesalers that as a result of the merger, it would begin reviewing the retention of wholesalers that had previously distributed and sold Labatt USA's and BNA's brands. During this review, InBev USA concluded that Ohio law, specifically § 1333.85
of the Franchise Act, allowed InBev USA to terminate its franchise agreements with respect the Labatt USA and BNA brands because those brands were now owned by a "successor manufacturer," i.e. Latrobe, now doing business as InBev USA. InBev USA further concluded that under the Franchise Act, it had ninety days from the date of the merger to effect these terminations.
 {¶ 8} Within ninety days, by Letter dated March 7, 2005, InBev USA notified Appellee Esber that its franchise agreement would be terminated, effective March 31, 2005, with respect to Labatt USA's and BNA's brands, and that Appellee would be *Page 4 
compensated for the diminished value of their businesses, as required by the Franchise Act.
 {¶ 9} Esber refused to recognize InBev USA's ability to terminate this relationship and on March 29, 2005, Plaintiff-Appellee Esber Beverage Company filed this action in the Stark County Court of Common Pleas against Defendants-Appellants InBev USA, LLC, Doug Tomlin and John Neely, managers of InBev USA, in order to enjoin InBev USA from terminating Esber's distribution rights.
 {¶ 10} On March 30, 2005, Esber filed an Amended Verified Complaint with Jury Demand (the "Amended Complaint"). The Amended Complaint added Superior Beverage Group, Ltd. ("Superior") and Central Beverage Group Ltd. ("Central") as defendants, asserting that those companies intentionally interfered with and conspired to illegally obtain exclusive distribution rights long held by Esber.
 {¶ 11} The Amended Complaint asserted four counts against InBev USA, Tomlin, and/or Neely: Count One of the Amended Complaint alleged that InBev USA intended to terminate its franchise relationship with Esber in violation of the Act, R.C. § 1333.82 et seq., and sought temporary and permanent injunctive relief prohibiting InBev USA from terminating its franchise relationship with Esber in any manner not consistent with the requirements of the Act. Count Two of the Amended Complaint alleged that InBev USA intentionally interfered with Esber's business relationships, and sought temporary and permanent injunctive relief prohibiting InBev USA from interfering with Esber's business relationship with current customers and accounts. Count Three of the Amended Complaint asserted a claim for promissory estoppel against InBev USA and its *Page 5 
representatives. Count Five of the Amended Complaint alleged that InBev USA and other defendants named in the action had conspired to perpetrate violations of the Act.
 {¶ 12} On the same day it filed its Amended Complaint, Esber obtained a temporary restraining order against InBev USA.
 {¶ 13} InBev USA answered Esber's Amended Complaint and asserted a Counterclaim (the "Counterclaim"). InBev USA's Counterclaim sought a declaration that, as a result of its merger, InBev USA's termination of the distribution agreement with Esber would not constitute a violation of the Act, R.C. § 1333.85.
 {¶ 14} The InBev USA defendants and Esber filed cross-motions for summary judgment in October, 2005.
 {¶ 15} In their motion, the InBev USA defendants sought summary judgment on Counts One, Two, Three and Five of Esber's Amended Complaint and on their own Counterclaim.
 {¶ 16} Esber's cross-motion was one for partial summary judgment, seeking judgment in its favor on its claim that InBev USA's proposed termination of the franchise relationship with Esber would violate the Act.
 {¶ 17} Essentially, InBev USA and Esber each sought judgment as a matter of law on their respective claims for declaratory relief.
 {¶ 18} Neither Central nor Superior filed motions for summary judgment or joined in the above motions. The claims against them are still pending.
 {¶ 19} On February 27, 2006, the trial court entered its decision and judgment entry regarding the parties' motions for summary judgment. The trial court considered Count One of Esber's Amended Complaint and InBev USA's Counterclaim together, as *Page 6 
both presented a similar question. The trial court held that the merger that InBev USA had recently undergone was a transfer, alteration, or restructuring between related entities, see R.C. 1333.85(B). The trial court held that the application of R.C. § 1333.85(D) "only occurs when a brand is transferred from one manufacturer to another manufacturer not under common control." The trial court granted Esber's cross-motion for partial summary judgment and awarded it summary judgment on Count One of its Amended Complaint.
 {¶ 20} With respect to the other claims asserted in the Amended Complaint, the trial court concluded that genuine issues of material fact remained and denied InBev USA's motion for summary judgment as to those claims.
 {¶ 21} On March 13, 2006, InBev USA moved the trial court to certify its judgment entry dated February 27, 2006, as a final appealable order with no just reason for delay. Esber opposed this motion pursuant to Civ.R. 54(C).
 {¶ 22} On March 24, 2006, the trial court certified its judgment entry dated February 27, 2006, as a final appealable order.
 {¶ 23} InBev USA timely filed a notice of appeal on April 21, 2006, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 24} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO ESBER BEVERAGE COMPANY ON ITS CLAIM FOR DECLARATORY RELIEF.
 {¶ 25} "II. THE TRIAL COURT ERRED IN FAILING TO GRANT DECLARATORY RELIEF IN FAVOR OF APPELLANTS." *Page 7 
 Summary Judgment Standard of Review {¶ 26} Our standard of review is de novo, and as an appellate court, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. Accordingly, an appellate court must independently review the record to determine whether summary judgment was appropriate, and we need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412.
 {¶ 27} Civ.R. 56(C) provides:
 {¶ 28} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only [therefrom], that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 29} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the *Page 8 
nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107.
 {¶ 30} It is based upon this standard that we review appellant's assignments of error.
 I., II. {¶ 31} We will address Appellant's first and second assignments of error simultaneously as both challenge the trial court's summary judgment ruling.
 {¶ 32} Appellant argues that the trial court erred in denying its motion and granting Appellee's motion for summary judgment. We disagree.
 {¶ 33} The issue in the case sub judice is whether InBev USA, LLC violated the Ohio Alcoholic Beverages Franchise Act, O.R.C. Section1333.82, et seq. by terminating its franchise agreement with Esber Beverage Company.
 {¶ 34} More specifically, this Court needs to determine whether InBev USA, LLC is a "successor manufacturer" under R.C. § 1333.85(D). If the answer to such query is negative, it cannot terminate the subject franchise without just cause.
 {¶ 35} Revised Code § 1333.85, provides:
 {¶ 36} "Cancellation of or failure to renew franchise; noticerequired, exceptions *Page 9 
 {¶ 37} "Except as provided in divisions (A) to (D) of this section, no manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for other than just cause and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change.
 {¶ 38} "(A) Neither party shall be required to give to the other party such notice if any of the following events occur:
 {¶ 39} "(1) The filing of a petition in bankruptcy or an assignment for the benefit of creditors by the other party;
 {¶ 40} "(2) The filing of an involuntary petition in bankruptcy against either party, which petition is not dismissed within thirty days;
 {¶ 41} "(3) The cancellation, revocation, or suspension for more than thirty days of any permit required to be held by either party to authorize the handling of alcoholic beverages.
 {¶ 42} "The occurrence of any one of the foregoing events shall constitute just cause for cancellation or failure to renew a franchise or substantially changing a sales area or territory without the prior consent of the other party.
 {¶ 43} "(B) The occurrence of any of the following events shall not constitute just cause for cancellation of or failure to renew a franchise or substantially changing a sales area or territory without the prior consent of the other party:
 {¶ 44} "(1) The failure or refusal on the part of either party to engage in any act or practice which would result in a violation of any federal law or regulation or any law or rule of this state; *Page 10 
 {¶ 45} "(2) The restructuring, other than in bankruptcy proceedings, of a manufacturer's business organization;
 {¶ 46} "(3) A unilateral alteration of the franchise by a manufacturer for a reason unrelated to any breach of the franchise or violation of sections 1333.82 to 1333.86 of the Revised Code by the distributor;
 {¶ 47} "(4) A manufacturer's sale, assignment, or other transfer of the manufacturer's product or brand to another manufacturer over which it exercises control.
 {¶ 48} "(C) If a manufacturer or distributor cancels or fails to renew a franchise, the distributor shall sell to the manufacturer and the manufacturer shall purchase from the distributor all of the distributor's inventory of the manufacturer's products and sales aids at the laid-in cost to the distributor including freight and cartage, provided that upon payment therefor the distributor shall transfer to the manufacturer good title to all such property free of liens and encumbrances.
 {¶ 49} "(D) If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. Any notice of termination or nonrenewal of the franchise to a distributor of the acquired product or brand shall be received at the distributor's principal place of business within the ninety-day period. If notice is not received within this ninety-day period, a franchise *Page 11 
relationship is established between the parties. If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal. Upon termination or nonrenewal of a franchise pursuant to this division, the distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand as set forth in division (C) of this section, and the successor manufacturer also shall compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated or not renewed by the successor manufacturer. The value of the distributor's business that is directly related to the sale of the terminated or nonrenewed product or brand shall include, but shall not be limited to, the appraised market value of those assets of the distributor principally devoted to the sale of the terminated or nonrenewed product or brand and the goodwill associated with that product or brand." (1994 S 209, eff. 11-9-94; 1992 H 725, eff. 4-16-93; 1992 H 693; 1990 S 257; 1974 H 857).
 {¶ 50} InBev USA argues that it is a "successor manufacturer" in accordance with R.C. § 1333.85(D) and therefore was entitled to terminate the franchise agreement with Esber.
 {¶ 51} Esber maintains that InBev USA was not a successor manufacturer and therefore InBev USA could not terminate the franchise agreement without just cause or with sixty days notice and the consent of the distributor.
 {¶ 52} As stated above, the determinative question is whether InBev USA is a "successor manufacturer" of the terminated brands. The term "successor manufacturer" *Page 12 
has not been defined by the Ohio Legislature. Therefore, this court must determine what the legislature meant when it used the term "successor manufacturer". Christe v. GMS Mgt. Co., Inc. (2000), 88 Ohio St. 3d 376,377. In determining legislative intent, this Court "cannot pick one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." See State v. Wilson (1997), 77 Ohio St. 3d 334, 336 (1997). The starting point for determining intent is "the language in the statute and the purpose to be accomplished." Christe, 88 Ohio St. 3d at 377. If the language is plain, unambiguous, and conveys a clear and definite meaning, then there is no need to rely on other rules of statutory interpretation. Provident Bank v. Wood (1973), 36 Ohio St. 2d 101,105-106. However, if the language is not clear and unambiguous, then the court must consider other factors such as the circumstances surrounding enactment, the spirit of the statute, pubic policy, and the consequences of a particular interpretation. Christe, 88 Ohio St. 3d at 377-378; C.R.C. § 1.49.
 {¶ 53} On April 3, 2006, in a virtually identical case, InBev USA,LLC. v. Hill Distributing Co., et al., Case No. 2:05-CV-00298 (S.D. Ohio, April 3, 2006), the United States District Court for the Southern District of Ohio, Eastern Division, granted the summary judgment motions of the defendant-distributors on their claims seeking a declaration that Plaintiff InBev USA LLC's termination of their respective franchise agreements would violate Ohio's Alcohol Beverages Franchise Act, R.C. § 1333.82 et seq., The Federal District Court found that the Defendants were entitled to injunctive relief prohibiting the termination of their franchise agreements. *Page 13 
 {¶ 54} In said case, the Federal District Court, in determining the legislative intent behind the use of the term "successor manufacturer", stated:
 {¶ 55} "The language of § 1333.85 is not entirely clear and unambiguous. Section 1333.85(3) defines specific acts that do not constitute just cause for termination. While this court is not called upon to determine whether or not just cause existed, the prohibitions found in § 1333.85(3) are instructive with respect to the legislature's intent to prohibit certain conduct and its understanding of the term "successor manufacturer."
 {¶ 56} "Section 1333.85 (B) (2) states that "the restructuring . . . of a manufacturer's business organization" is not just cause for termination of a franchise. Moreover, § 1333.82(B) (4) states that the sale or other transfer of a brand to another manufacturer under common control is not just cause for termination. These provisions demonstrate a clear legislative intent to deny manufacturers the ability to terminate franchises due to corporate reorganizations or the shifting of brands among entities under common control.
 {¶ 57} "Section 1333.85 (B) (2) expressly states that "[t]he restructuring, other than in bankruptcy proceedings, of a manufacturer's business organization" does not constitute just cause for termination of a franchise. See § 1333.85(B)(2). While the statutory term "restructure" is not defined, its common meaning is, "to give a new structure or organization to." Webster's Third New International Dictionary, Merriam-Webster Inc. (1981)."
 {¶ 58} In applying the such statutory interpretation to the case before it, the Federal District Court held: *Page 14 
 {¶ 59} "That is exactly what took place here. No assets, liabilities, products, or brands were transferred to any new ownership group. InBev USA's own documents admit as much by calling the merger a "reorganization by InBev of Belgium of its United States operations," and a "streamlining of [its] US corporate structure.""
 {¶ 60} In considering InBev's argument that the merger was not a restructuring because Labatt USA and BNA were eliminated by the merger, not restructured, the Federal District Court found:
 {¶ 61} "This argument ignores the realities of the transaction. Labatt USA and BNA were, and their brands still are, a part of the same business organization. The merger was just a part of InBev Belgium's activities that resulted in a complete restructuring and renaming of its U.S. business operations. Because no consideration was paid, no products changed ownership control, and this restructuring took place outside a bankruptcy proceeding, InBev USA's actions fit squarely within the conduct prohibited under § 1333.85(B)(2)."
 {¶ 62} "* * *
 {¶ 63} "InBev USA's interpretation would create an enormous loophole in the statutory prohibition of termination based on intra-corporate restructuring. Under InBev USA's interpretation, corporations could simply create new entities, contrive meaningless sales or paper mergers, and then terminate franchise agreements at will. InBev USA argues that this result was intended by the legislature because § 1333.85(D) requires a manufacturer to compensate a distributor for the diminished value of its business. *Page 15 
 {¶ 64} "InBev USA's argument is not persuasive. A court must read various provisions of a statute consistently and presume that the legislature intended the entire statute to have meaning and effect.Taber v. Ohio Dept of Human Services, 125 Ohio App. 3d 742, 747 (Ohio App. 1998); C.R.C. § 1.47(B). No plausible reason exists as to why the legislature would expressly deny termination rights in one section, then several paragraphs later, create an exception that would swallow the original rule. Moreover, it would not make sense for § 1333.85(D) to condition termination rights on a "merger or acquisition," if a contrived sale and/or paper merger, like the merger in this case, qualified. If the legislature truly intended to grant manufacturers the ability to buy their way out of franchise agreements by paying the distributor for the diminished value of its business, it would have simply said so. Plaintiff's interpretation must be rejected because it is inconsistent with the purpose and spirit of the Franchise Act and contrary to the legislature's apparent intended meaning of the term "successor manufacturer."
 {¶ 65} While cognizant that this Court is not bound by this Federal Court case, we find said opinion to be well-reasoned and persuasive.
 {¶ 66} With the exception of the franchisee(s), the facts in the case sub judice are identical to InBev v. Hill, supra. For the same reasons set forth by the Federal Court, we too find that the "merger" in the instant case is more accurately defined as a restructuring and renaming of its U.S. business operations, with no products changing *Page 16 
ownership control. We therefore find that InBev USA's actions fit squarely within the conduct prohibited under § 1333.85(B)(2).
 {¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.
 Gwin, P.J, and Farmer, J., concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, is affirmed.
 Costs assessed to appellants. *Page 1