[Cite as *State ex rel. Tradesmen Internatl., L.L.C. v. Indus. Comm.*, 2022-Ohio-2935.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Tradesmen International, LLC.,  :

      Relator,              :

v.                             :          No.  20AP-572

Industrial Commission of Ohio et al.,    :      (REGULAR CALENDAR)

      Respondents.     :

D E C I S I O N

Rendered on August 23, 2022

**On brief:** *Dinsmore & Shohl LLP*, *Michael L. Squillace*, and *Christen S. Hignett*, for relator.

**On brief:** *Tarkowsky & Piper Co., L.P.A., John Tarkowsky,* and *Gregory J. Tarkowsky,* amicus curiae in support of relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Gary*, for respondent Industrial Commission of Ohio.

**On brief:** *The Ivan Law Firm,* and *Katherine E. Ivan*, for respondents Linda Crow and Matthew Crow.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Tradesmen International, LLC ("Tradesmen International"), filed a petition for writ of mandamus to order respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding Matthew Crow to be a partial dependent of a deceased employee of Tradesmen International and awarding him a lifetime death benefit.

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, the petition was referred to a magistrate of this court.  The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that the petition be denied. Tradesmen International filed timely objections to the magistrate's decision, which have been submitted to this panel for ruling.

{¶ 3}   On December 28, 2018, Michael Crow was killed in a workplace accident while in the course and scope of his employment with relator. Matthew Crow, born January 7, 1971, is Michael's son. He was born deaf and blind in one eye, receives social security payments, and lives with his mother, Michael's ex-wife Linda. On October 22, 2019, Linda and Matthew filed an application for death benefits, asserting that Michael had provided them money for mortgage payments every month, that Michael had been living in a recreational vehicle parked in the driveway of their home, and that he shared their address. The district hearing officer overruled the application, indicating that the assertions alone were insufficient to establish that either Linda or Matthew were Michael's dependents.

{¶ 4}   Following a telephone appeal hearing, a staff hearing officer ("SHO") issued an order denying Linda's request for benefits but concluding that Matthew was Michael's partial dependent. The SHO found that although Matthew was employed and did not live with Michael, a June 1, 2015 letter from the agency Opportunities for Ohioans with Disabilities found that was Matthew was "most significantly disabled," eligible for vocational service, and had only limited functional capacity for self-care, employment, work skills, communication for employment, or self-direction for employment. (Ex. 3 at 2, attached to Compl.) The SHO concluded that these disabilities were lifelong and posed a significant barrier to Matthew's ability to find and sustain employment. Moreover, the SHO found that Michael helped to provide shelter for Matthew by assisting with Linda's mortgage payments, using his veteran benefit for that purpose. The SHO therefore found that Matthew was partially dependent upon Michael on the date of Michael's death and was entitled to payments as partial dependent pursuant to R.C. 4123.59(C) for the remainder of his life.

{¶ 5}   Tradesmen International appealed the SHO's finding to the respondent commission, who refused to hear the appeal and denied Tradesmen International's motion

for reconsideration of that decision. Tradesmen International then filed the instant action, requesting this court issue a writ of mandamus ordering the respondent to vacate the finding that Matthew was Michael's partial dependent eligible for death benefits, and to order instead that Matthew was not Michael's partial dependent.

{¶ 6} On review, the magistrate found that the respondent had not abused its discretion and recommended that the writ be denied. Tradesmen International has now filed and argued three objections to this Court.

> I. The Magistrate erred by finding that there was "some evidence" to support the finding that Matthew Crow was partially dependent on his father for support.
>
> II. The Magistrate erred by finding that the order of the industrial commission was not contradictory regarding the proof that Michael Crow actually paid the mortgage on the house where Matthew Crow was living.
>
> III. The Magistrate erred by finding that it was not an abuse of discretion to award Matthew Crow lifetime benefits when O.R.C. 4123.59(B) would have limited his benefits if he had been wholly dependent on Michael Crow.

{¶ 7} An employer seeking a writ of mandamus who contends that the Industrial Commission's decision to grant benefits was not supported by sufficient evidence must demonstrate that the commission abused its discretion. "For more than fifty years, the 'some-evidence' rule, although not always referred to by that name, has been recognized as the rule to be applied in determining whether there has been an abuse of discretion with respect to factual matters." *E.g., State ex rel. Johnson v. Indus. Comm.*, 11 Ohio App.3d 22, 23 (10th Dist.1983) (citing cases). "[T]he mandamus determination must be predicated upon a finding whether or not there is evidence to support the findings of the Industrial Commission, not whether this court agrees with those findings." *Id.*, citing *State ex rel. Questor Corp. v. Indus. Comm.*, 70 Ohio St.2d 240 (1982). The presence of contrary evidence is not dispositive, so long as the "some evidence" standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. Where there is no evidence upon which the commission could have based its factual conclusion, an abuse of discretion is present and mandamus is appropriate. *State ex rel. Teece v. Indus. Comm.*, 68

Ohio St.2d 165, 167 (1981), citing *State ex rel. Kramer v. Indus. Comm,* 59 Ohio St.2d 39, 42 (1979).

{¶ 8} R.C. 4123.59, the statute governing worker's compensation death benefits, provides in pertinent part:

> (C) If there are partly dependent persons at the time of the death the weekly payment is sixty-six and two-thirds per cent of the employee's average weekly wage, not to exceed sixty-six and two-thirds per cent of the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code, and shall continue for such time as the administrator in each case determines.
>
> * * *
>
> (D)(2) [T]he question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless such person is a member of the family of the deceased employee, or bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister.

{¶ 9} Tradesmen International first objects that the record before the commission did not contain evidence sufficient to meet the "some evidence" standard, and that the magistrate's conclusion to the contrary was erroneous. Initially, it seems beyond dispute that there is "some evidence" that Matthew was unable to provide for himself without assistance; therefore, it seems that Tradesmen International contends there was not "some evidence" in the record that Michael helped to provide for Matthew. But as the magistrate found, there was evidence on this issue—Linda's unrebutted statement was that Michael made mortgage payments every month on the house after he moved out and until he died, and because Michael was not required to make mortgage payments under the terms of the divorce decree, it was fair for the commission to conclude that Michael made those payments and did so for the benefit of Matthew. The magistrate concluded, and we agree, that while this evidence is "not overwhelming or irrefutable" there was some evidence in the record to support the SHO's determination that the decedent made mortgage payments in order to provide Matthew a place to live. (Mag's decision at ¶ 33.) Accordingly, Tradesmen International's first objection is overruled.

{¶ 10} Tradesmen International's second objection argues that the order of benefits is self-contradictory, as the SHO found that Michael's mortgage payments did not establish that Linda was partially dependent upon him, but were sufficient to establish that Matthew was partially dependent. Tradesmen International also asserts that the SHO found that there was insufficient evidence to conclude that Michael made mortgage payments when evaluating Linda's claim, but found that such payments were in fact made when evaluating Matthew's claim.

{¶ 11} Tradesmen International has misunderstood the SHO's decision. It is true that the SHO observed that Linda "has not provided any documentation to the file to substantiate [Michael's] continued payment since 2006 toward the mortgage," but the SHO did not find that Michael did not make such payments. (Ex. 3 at 2, attached to Compl.) Rather, the SHO denied Linda's claim, concluding that she "does not meet the criteria" under R.C. 4123.59 to establish she was dependent on Michael, because she and Michael did not "live together at the time of [his] death" and had been "separated due to [his] aggression." *Id*. at 3. The SHO further concluded that Linda's evidence that Michael made mortgage payments, shared some meals with her, and contributed to some of the utilities did not establish that she was partially dependent on him. Both the SHO and the magistrate recognized and reconciled the tension between the denial of Linda's claim and the grant of Matthew's claim by observing that Matthew is Michael's lineal descendant, that Matthew has disabilities that Linda does not, and that the divorce decree did not obligate Michael to pay support to Linda. The SHO concluded that Michael's arrangement with Linda "appears to be more of a situation that the two had a continued relationship for the sake of their son," (Ex. 3 at 2, attached to Compl.) and that Michael "did help to provide shelter for Matthew by helping with the mortgage payment." *Id*. at 3. The magistrate accordingly determined that "the SHO's explanation sufficiently distinguished Linda's circumstances from Matthew's circumstances when it found Matthew to be partially dependent but did not find Linda to be wholly or partially dependent, as it relates to the payment of the mortgage." (Mag's Decision at ¶ 36.) We concur, and Tradesmen International's second objection is therefore overruled.

{¶ 12} Finally, Tradesmen International objects that it was an abuse of discretion for the SHO to award lifetime benefits for a partial dependency, as benefits for a whole

dependency are statutorily limited. But R.C. 4123.59(C) provides that partial benefits "shall continue for such time as the administrator in each case determines," and the magistrate noted that there was sufficient evidence to establish that Matthew's disability was lifelong. Based on the plain language of the statute, the lifetime award was within respondent's discretion. Tradesmen International's third objection is therefore overruled.

{¶ 13} Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusion of law, and conclude that the respondent's decision was supported by some evidence. Tradesmen International's three objections to the magistrate's decision are overruled and the writ is denied.

*Objections overruled;*
*writ of mandamus denied.*

LUPER SCHUSTER, P.J., and SADLER, J., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Tradesmen International, LLC.,      :

      Relator,                                          :

v.                                                        :                    No.  20AP-572

Industrial Commission of Ohio et al.,            :                (REGULAR CALENDAR)

      Respondents.                                      :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on  October 5, 2021

---

*Dinsmore & Shohl LLP, Michael L. Squillace,* and *Christen S. Hignett,* for relator.

*Tarkowsky & Piper Co., L.P.A., John Tarkowsky,* and *Gregory J. Tarkowsky,* amicus curiae in support of relator.

*Dave Yost,* Attorney General, and *Denise A. Gary,* for respondent Industrial Commission of Ohio.

*The Ivan Law Firm,* and *Katherine E. Ivan*, for respondents Linda Crow and Matthew Crow.

---

IN MANDAMUS

{¶ 14} Relator, Tradesmen International, LLC "(the employer"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order finding that Matthew Crow ("Matthew") was eligible for death benefits as being a partial dependent of Michael

Crow ("decedent"), and issue an order finding that Matthew is not a partial dependent of the decedent.

Findings of Fact:

{¶ 15} 1. On December 28, 2018, decedent, while in the course of and arising from his employment with "the employer," died when he was crushed between two pieces of equipment. The accident occurred at the facility of Liberty Castings Co., L.L.C. ("Liberty Castings"), where the employer had placed the decedent to work.

{¶ 16} 2. Respondent, Linda Crow ("Linda"), and decedent married in 1967 but divorced in 2008.

{¶ 17} 3. Matthew, who was born January 7, 1971, is Linda and decedent's son. He is deaf and blind in one eye and receives social security payments.

{¶ 18} 4. Linda and Matthew live in a house together. The house and former mortgage were in Linda's name.

{¶ 19} 5. On October 22, 2019, Linda and Matthew filed an application for death benefits. Attached to the application was a bank statement from Fairfield National Bank, which bore both decedent's and Linda's names, and a cancelled check dated October 6, 2018, which was signed by Linda and drawn on an account bearing both Michael's and Linda's names. Somebody had written on the statement that the cancelled check was for the mortgage payment and that decedent sent money every month. Also handwritten on one page of the application was that decedent's recreational vehicle ("RV") was parked in Linda's driveway, he lived there, and they shared the same address.

{¶ 20} 6. On January 8, 2019, the employer certified the death claim to the extent that decedent's death occurred within the course of and arising out of his employment with the employer.

{¶ 21} 7. On February 7, 2020, a district hearing officer ("DHO") held a hearing on the application. The only issue for adjudication was whether decedent had dependents eligible for death benefits. Neither Linda nor Matthew appeared at the hearing. The DHO denied the application, and found the following: (1) because Linda and decedent were not married at the time of his death, Linda is not presumed wholly dependent pursuant to R.C. 4123.59(D); (2) the information in the file is not sufficient to establish that Linda was a dependent of decedent; (3) Linda was not present at the hearing to offer testimony about

her income, expenses, and financial circumstances; (4) there was no evidence in the claim file and no evidence was presented at the hearing to support the contention that Matthew was entitled to benefits as a physically or mentally incapacitated child of decedent; and (5) Matthew is not eligible for benefits as a dependent of decedent. Linda and Matthew appealed.

{¶ 22} 8. On July 20, 2020, a staff hearing officer ("SHO") held a hearing over the telephone due to COVID-19. Prior to the hearing, Linda filed the following: (1) an unsigned statement from Linda, stating that decedent lived on her property in an RV, decedent used her electrical power and water supply, decedent made mortgage payments every month on the house she and Matthew lived in, decedent's mortgage payments were not a requirement of the divorce, the house was paid off after decedent's death, decedent helped with household repairs, decedent would come visit with Matthew and eat dinner, decedent always slept in his RV, and Matthew was disabled and received Social Security payments; and (2) a June 1, 2015, order of selection from the Zanesville Bureau of Vocational Rehabilitation, which indicated Matthew was "most significantly disabled," eligible for services, and seriously limited in self-care for employment outcome, work skills, communication for employment outcome, and self-direction for employment outcome. Linda testified at the SHO hearing, while Matthew did not.

{¶ 23} 9. On July 29, 2020, the SHO mailed an order, in which she denied Linda's application for benefits as wholly or partially dependent but granted Matthew's application for benefits as partially dependent. In the order, the SHO found the following with regard to Linda's claim: (1) Linda and decedent were not married at the time of his death; (2) they divorced in 2008, and decedent's requirement to pay spousal support was terminated in January 2014; (3) decedent remarried shortly after the divorce, but decedent's spouse died in 2017; (4) at the time of his death, decedent lived in an RV parked on Linda's property and used her electricity and water; (5) decedent moved onto Linda's property shortly after his second wife died; (6) Linda and Matthew lived in a house on the property that Linda and decedent built in 2006, where they lived until decedent moved out four months later; (7) the property is owned by Linda; (8) Linda claimed decedent agreed to pay the mortgage payment after moving out, and he continued to do so until he died; (9) at the time of decedent's death, the mortgage was paid off through insurance the decedent had paid for;

(10) Linda has not provided any documentation to substantiate decedent's continued payment since 2006 toward the mortgage; (11) joint banking account information shows a payment from the VA to decedent but no payments to the mortgage company bearing his signature; (12) the divorce decree is not on file to support a formal agreement between the parties regarding the monthly house payment; (13) although on the same property, Linda and decedent lived in separate residences; (14) Linda said in her statement submitted before the hearing that decedent would eat dinner with Linda and Matthew but always slept in his RV; (15) the evidence clearly shows that Linda and decedent were not living as husband and wife at the time of his death, and the facts do not meet the criteria for wholly dependents in R.C. 4123.59; (16) with regard to partial dependency, the sharing of meals and some utilities does not support financial dependency; (17) it appeared that the two had a continued relationship for the sake of their son, with whom meals were shared; and (18) Linda supplied no documentation to establish that decedent remained named on the mortgage and, therefore, legally responsible for this debt, or any documentation that decedent paid this debt for any period between when he moved out in 2006 and his death in 2018.

{¶ 24} 10. With regard to Matthew's claim, the SHO found the following: (1) according to Linda, Matthew was born deaf and blind in one eye; (2) Matthew attended and graduated from Ohio School for the Deaf; (3) since he was 18 years old, Matthew has received Social Security benefits for his lifelong disabilities; (4) Matthew works off and on and is currently working at Lowe's unloading trucks and has done so since before decedent's death; (5) there is no evidence that Matthew's employment has been through a sheltered workshop; (6) as to whole dependency, Matthew did not live with the decedent but in a house with his mom; (7) Linda testified that she provides for the care and support of Matthew, and he receives disability payments; (8) Linda manages his finances through a joint banking account although she is not his formal legal guardian; (9) because Matthew and decedent were not living together and decedent was not providing more than half of his daily support, he is not wholly dependent; (10) there is no evidence in the file that decedent was legally liable for Matthew's support at the time of his death; (11) the terms of support in the divorce decree have not been provided; (12) according to the printout from the court, the divorce was pursued as being without dependent children; (13) Matthew has a high-school degree; (14) Linda asserts that Matthew has cognitive deficits, but only

testimony was provided to support these deficits; (15) Matthew is employed and has not established he is incapacitated from earning; (16) as for Matthew's partial dependency, a June 1, 2015, letter from the Opportunities for Ohioans with Disabilities agency notified Matthew that his priority status for services was deemed "most significantly disabled," which qualified him for vocational service; (17) the letter indicated that Matthew had limited functional capacity in areas of selfcare for employment outcome, work skills, communication for employment outcome, and self-direction for employment outcome; (18) the letter and case file for the current case is unclear whether Matthew has true cognitive deficits; (19) despite this deficiency, Matthew does have disabilities stemming from being deaf and blind in one eye; (20) Matthew's disabilities are lifelong and create challenges to finding and sustaining employment; (21) while not found sufficiently determinative of the dependency of Linda, the SHO is persuaded the decedent did help to provide shelter for Matthew by helping with the mortgage payment, and this is the only direct financial support provided; thus, Matthew was partially dependent on the decedent on the date of his death; (22) the SHO is cognizant of finding the same evidence persuasive in Matthew's situation but not with Linda's situation; however, Matthew is a lineal descendant and has significant physical impairments that impact his ability to provide a level of income to cover living expenses; (23) Linda clearly provides for Matthew's nourishment, clothing, and other costs of living; (24) the decedent provided money, via his VA benefit, to keep a roof over Matthew's head and paid for insurance to ensure that this continued, which was proof he was aware that Matthew might struggle to provide this for himself; and (25) payments shall be made to Matthew as partial dependent in accordance with the provisions of R.C. 4123.59(C) for the remainder of his natural life.

{¶ 25} 11. The employer appealed the SHO's order to the commission, but the commission refused the appeal in an order mailed August 19, 2020.

{¶ 26} 12. The employer filed a motion for reconsideration, which the commission denied on October 6, 2020.

{¶ 27} 13. On December 14, 2020, the employer filed a complaint for writ of mandamus, requesting that this court issue a writ of mandamus ordering the commission to vacate its order finding that Matthew was eligible for death benefits as being a partial

dependent of the decedent, and issue an order finding that Matthew is not a partial dependent of the decedent.

{¶ 28} 14. Liberty Castings has filed a brief of amicus curiae in support of the employer.

Conclusions of Law and Discussion:

{¶ 29} The magistrate recommends that this court deny the employer's writ of mandamus.

{¶ 30} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 31} R.C. 4123.59 governs the commission's determination of a claimant's entitlement to death benefits. R.C. 4123.59(B) provides for death benefits payable to "wholly dependent persons at the time of the death," and R.C. 4123.59(C) provides for death benefits payable to "partly dependent persons at the time of the death."

> R.C. 4123.59(D) provides:
>
> The following persons are presumed to be wholly dependent for their support upon a deceased employee:
>
> (1) A surviving spouse who was living with the employee at the time of death or a surviving spouse who was separated from the employee at the time of death because of the aggression of the employee;

(2) A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.

\* \* \*

In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless such person is a member of the family of the deceased employee, or bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister.

{¶ 32} Thus, it is within the discretion of the commission to determine whether a claimant is dependent upon the decedent at the time of death. *State ex rel. Maglis v. Indus. Comm. of Ohio*, 10th Dist. No. 15AP-648, 2016-Ohio-4644, ¶ 8. *See also State ex rel. Tweed vs. Columbus Parcel Services, Inc.*, 69 Ohio St.2d 331 (1982). Therefore, "once the commission has made a determination on whether a claimant is wholly or partially dependent, this finding can be disturbed only if '\* \* \* that order constitutes an abuse of discretion \* \* \*.' " *Tweed* at 333, citing *State ex rel. City Iron Works, Inc. vs. Indus. Comm.*, 52 Ohio St.2d 1 (1977). Stated in other words, " '\* \* \* the degree of dependency is a question of fact to be determined by the Industrial Commission from the proof before it, and when it has assumed jurisdiction of a claim and has made a determination upon the evidence, such determination is final, unless a gross abuse of discretion is clearly indicated, or an unlawful procedure has been followed.' " *Id.*, quoting *State ex rel. Pivk v. Indus. Comm.*, 130 Ohio St. 208, 212 (1935). Furthermore, the statute clearly sets forth that the commission has discretion to determine the period of time that the compensation will be received. *Maglis* at ¶ 11.

{¶ 33} In the present matter, the employer first argues there is no evidence to support the finding that Matthew was actually financially dependent upon decedent at the

time of decedent's death, and Matthew failed to sustain his burden on this issue. The employer claims the award was based upon speculation, assumption, and conjecture. The employer cites the following in support of its argument: (1) there is no dispute that, at the time of his death, decedent was not legally obligated to support his adult son; (2) there is no dispute that Matthew did not attend any of the hearings and did not submit any written statements to support his claim; (3) although Matthew is hearing impaired, there is no evidence that he lacks the cognitive skills to communicate in any fashion; (4) Matthew is able to work at Lowe's despite his impairment; (5) Matthew graduated from high school; (6) all of the "evidence" came from Linda, via an unsigned statement and her testimony; (7) the SHO concluded that the only direct financial support provided was that decedent helped with the mortgage payments, and there was no competent evidence to support this finding; and (8) although Linda's statement provided the only support to find decedent helped with the mortgage, there was no proof to support the statement, as decedent did not own the property, decedent's name was not on the mortgage, decedent had no obligation to make any payments, Linda did not submit any cancelled checks or bank records as support, and Linda only submitted an October 6, 2018, check she signed.

{¶ 34} Although many of the employer's above contentions, namely (1) through (6), are accurate and present reasonable points in an attempt to undermine the commission's determination regarding dependency, they do not necessarily negate the commission's determination or indisputably invalidate its reasoning or evidence. There was some evidence before the commission to support a finding that Matthew was disabled. The evidence demonstrated that Matthew was deaf and blind in one eye. A June 1, 2015, order of selection from the Zanesville Bureau of Vocational Rehabilitation indicated Matthew was "most significantly disabled," eligible for services, and seriously limited in self-care for employment outcome, work skills, communication for employment outcome, and self-direction for employment outcome. Whether these disabilities rose to the level of partial dependency on the part of Matthew was within the discretion of the commission. The SHO found this evidence demonstrated Matthew had lifelong disabilities that caused challenges to finding and sustaining employment and these significant physical impairments impacted his ability to provide a level of income to cover living expenses. The magistrate will not disturb such discretion, absent an abuse of that discretion, which the magistrate fails to find.

**{¶ 35}** With regard to the arguments contained in (7) and (8) above, the employer is correct that the commission relied upon the rationale that decedent helped with the mortgage payments to support its dependency determination; however, contrary to the employer's assertions, the SHO cited some evidence to support this finding. The SHO was persuaded that the decedent helped to provide shelter for Matthew by helping with the mortgage payment. The SHO found that the decedent provided money, via his VA benefit, to keep a roof over Matthew's head and paid for insurance to ensure this continued, which was proof he was aware Matthew might struggle to provide this for himself. There was evidence from Linda's statement that decedent made mortgage payments every month on the house after he moved out and until he died, and that the house was paid off after decedent's death with his insurance proceeds. Furthermore, Linda stated that decedent was not required to make payments on the mortgage pursuant to the terms of the divorce decree, which negates the idea that decedent was making the mortgage payments out of obligation to Linda and supports the notion that he was making the mortgage payments for the benefit of Matthew. The SHO agreed that the situation between Linda and decedent appeared to be more of one in which they maintained a relationship only for the sake of the son. Although not overwhelming or irrefutable evidence, there was some evidence to support the SHO's determination that the decedent made mortgage payments in order to provide Matthew a place to live, and, thus, he was partially dependent on the decedent on the date of his death. That most of the evidence regarding Matthew's disability and the decedent's payment of the mortgage originated from Linda's hearing testimony and written statement does not prevent the SHO from finding it credible or relying upon it. Questions of credibility are best left to the commission as the finder of fact.

**{¶ 36}** The employer next argues that the order is contradictory. The employer asserts that the SHO specifically found that Linda did not provide any documentation to substantiate the decedent's continued support since 2006 toward the mortgage to support her finding that Linda was not dependent, but then she concluded that the decedent did contribute to the mortgage when discussing Matthew's dependency. The employer then points out that the SHO noted the decedent's contribution to the mortgage was the only direct financial support provided. This cannot constitute "some evidence," claims the employer.

{¶ 37} The SHO recognized the tension between her findings relating to Matthew and Linda. She acknowledged that, while not sufficiently determinative of the dependency of Linda, she was persuaded the decedent did help to provide shelter for Matthew by helping with the mortgage payment. The SHO indicated she was cognizant that she had found the same evidence persuasive in Matthew's situation but not in Linda's situation; however, she explained, Matthew is a lineal descendant and has significant physical impairments that impact his ability to provide a level of income to cover living expenses, and the decedent provided money, via his VA benefit, to keep a roof over Matthew's head and paid for insurance that paid off the mortgage to ensure this continued, which was proof he was aware Matthew might struggle to provide this for himself.

{¶ 38} Though somewhat nuanced, the SHO's explanation sufficiently distinguished Linda's circumstances from Matthew's circumstances when it found Matthew to be partially dependent but did not find Linda to be wholly or partially dependent, as it relates to the payment of the mortgage. The SHO specifically noted that Matthew is a lineal descendent with significant impairments that impact his ability to financially care for himself. The SHO further explained that, while there was no obligation for the decedent to pay the mortgage on the house after his divorce from Linda, he maintained insurance that paid off the mortgage after his death. There was a distinction between Linda's and Matthew's situations, and the SHO's reasoning was not contradictory. The SHO did not find that the decedent never made any mortgage payments. With regard to Linda's dependency claim, the SHO found that there was insufficient evidence that the decedent made "continued" payments on the mortgage, and there was no evidence he was obligated to do so by formal agreement or decree, thereby preventing her dependency claim. With regard to Matthew's dependency claim, the SHO found that the decedent paid part of his VA benefit to "help" provide Matthew's shelter by "helping" with the mortgage payment, and he maintained insurance that paid off the mortgage at his death for Matthew's benefit. Thus, the SHO believed there was evidence that the decedent "helped" with the mortgage for Matthew's care, but there was not evidence that the decedent made "continued" payments or was obligated to do so for the benefit of Linda. Therefore, the SHO's order was not contradictory.

{¶ 39} The employer next argues that it was an abuse of discretion to award lifetime benefits to a 49-year-old son for the death of his 72-year-old father. The employer points out that if Matthew had been found to be wholly dependent, he would likely have not qualified for any award because his employment earnings would have exceeded the quarterly cap imposed by R.C. 4123.59(B)(3)(a); yet, his award as a partial dependent, the duration of which is determined by the commission, exceeds what he would have received as a wholly dependent person. The employer also points out that decedent was almost 73 years old when he died and likely only had a few years remaining in the workforce; yet, Matthew will be compensated for decades after his father would have left the workforce. The employer argues the commission gave no reasons for why Matthew should receive lifetime benefits.

{¶ 40} However, as indicated above, it is within the discretion of the commission to determine the period of time that the compensation will be received. *See Maglis* at ¶ 11. There was no abuse of discretion here. Although the employer points out some perceived unfairness in the differences between the statutory provisions for whole and partial dependency, there is no allegation that the SHO's order violates the statute. Matthew is deaf and blind in one eye, and the SHO noted these are lifelong disabilities. Matthew still requires care, support, and financial direction from his mother, and his impairments affect his ability to obtain and maintain employment. His mother currently provides for his nourishment, clothing, and other costs of living. Therefore, clearly the SHO had evidence before her to find Matthew would require financial assistance for the remainder of his life, and she adequately explained her rationale in the order. Therefore, the SHO did not abuse her discretion when she awarded partial dependency benefits to Matthew for the rest of his life.

{¶ 41} Accordingly, it is the magistrate's recommendation that this court should deny the employer's complaint for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).